## CLANTON v. OKLAHOMA TAX COMMISSION.

No. 35208.   Jan. 27, 1953.

Rehearing   Denied   Feb.   17,   1953.

*253 P. 2d 562.*

Bledsoe, Nicklas & Chrisman, Lawton, for plaintiff in error.

R. F. Barry, W. F. Speakman, and E. J. Armstrong, Oklahoma City, for defendant in error.

HALLEY, C. J. This is an appeal by E. B. Clanton from an order of the Oklahoma Tax Commission assessing additional income taxes against him for the year 1946.

E. B. Clanton and Irene Clanton were married in 1912 and have since resided in Oklahoma as husband and wife. In 1920, E. B. Clanton and others began to operate a truck transportation business. In 1938 the business was incorporated as "Southwestern Motor Carriers Company." An undisclosed number of shares of stock were issued to E. B. Clanton as his share of the former partnership. He acquired other shares and on July 26, 1945, he owned 183¾ shares which had cost him $18,375.

On February 15, 1946, he sold all of his stock for $150,000. This was a capital gain of $131,625. This gain was reported as community income on his and Irene Clanton's 1946 income tax re-return in equal shares.

The Commission treated this increase in the value of the stock as separate income of E. B. Clanton and levied an additional tax of $270.02, after giving E. B. Clanton credit for the tax paid by his wife on one-half of his income from the sale of stock.

E. B. Clanton and wife did not elect to come under the 1939 Community Property Act. The 1945 Community Property Act became effective July 26, 1945. It required no election and E. B. Clanton held his stock some seven months after the 1945 Act became effective. Sec. 1 of the 1945 Act is as follows:

"All property of the husband, both real and personal, owned or claimed by him before marriage, or before the effective date of this Act, whichever is later, and that acquired afterwards by gift, devise, or descent, or received as compensation for personal injuries, shall be his separate property."

Sec. 3 provides that:

"All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that which is the separate property of either as hereinbefore defined, shall be deemed the community or common property of the husband and wife and each shall be vested with an undivided one-half interest therein * * *."

The stock involved here was acquired by E. B. Clanton and paid for during the time when Irene Clanton was his wife. It is admitted that she did certain work and operated a boarding house at some time during their marriage. There is no showing that Irene Clanton contributed any of her earnings to the purchase or increase in the value of the stock. It appears to have stood in his name at all times and it must have been "owned or claimed" by him on the effective date of the 1945 Act.

There is no showing as to when or why the stock increased in value. It may or may not have increased in value between July 26, 1945, when the 1945 Act became effective and the date of sale, February 15, 1946. It is shown that it was all purchased more than two years prior to the date of sale.

E. B. Clanton contends that (1) capital gain is income; (2) that income is property, and (3) that increase or capital gain acquired from the sale or exchange of separate property is common or community property.

The Commission admits that capital gain is income and that income is property. The sole question remaining is whether or not capital gain acquired from the sale or exchange of separate property is community property or separate property.

In 1941, while the 1939 Community Property Act was in effect, this court decided the case of Harmon v. Oklahoma Tax Commission, 189 Okla. 475, 118 P. 2d 205. Harmon and wife had elected to come under that Act and the increase in value, or capital gain, on a nonproducing oil and gas lease acquired by Harmon with separate funds was held to be his separate property

for income tax purposes. In the second syllabus, it was said:

"Where a profit is realized from the sale of a nonproducing oil and gas lease made subsequent to the effective date of election to come under the terms of Community Property Act, supra, which lease, prior to said date, was the separate property of the husband, said profit is properly taxed as separate income of the husband."

The 1939 Community Property Act provided that "all property, both real and personal, of the husband owned or claimed by him before the effective date of the election to come under the terms of the Act***, also, the increase of all lands thus owned or acquired, shall be his separate properties." It makes a similar provision for the wife and states that property which is not the separate property of either shall be deemed community or common property of the husband and wife.

In Schwartz v. McDaniel, 202 Okla. 324, 213 P. 2d 568, this court had under consideration the 1945 Act and stated in the fourth syllabus, as follows:

"Under the Community Property Act, Title 32, chap. 1, sections 1 and 2, S.L. 1945, the property of either husband or wife owned or claimed by them prior to the effective date of the Act remained, upon the adoption of the Act, their separate property although acquired after marriage."

In Scofield v. Weiss, 5 Cir., 131 Fed. 2d 631, the taxpayer claimed that under the laws of Texas a gain received from the sale of corporate stock was community property. It was there said:

"***It seems to be conceded, but if not, it is well settled that an original issue of corporate stock, which was separate property when issued to the husband, retains its separate character, no matter how much it increases in value as a result of surplus accumulated out of the earnings of the corporation. Commissioner v. Skaggs, 5 Cir., 122 F. 2d 721; O'Conner v. Commissioner, 5 Cir., 110 F. 2d 652. And

this is so, though the increased value is largely due to the efforts and activities of the husband is managing officer of the corporation, Beals v. Fontenot, 5 Cir., 111 F. 2d 956***."

In Beals v. Fontenot, supra, the community property laws of Louisiana were under consideration and it was held that the community was not entitled to share in the increase in the value of corporate stock which was the separate property of the husband because such increase was due to the efforts of the corporation and not to the joint efforts of the husband and wife.

In 11 Am. Jur. sec. 26, p. 190, the general rule is stated as follows:

"***Generally in this country, property of a husband or wife need not, in order to maintain its character as such, be preserved in specie or in kind; separate property remains such through all its mutations and changes so long as it can be clearly and indisputably traced and identified***."

Again, on page 187, sec. 20 of 11 Am. Jur. it is said:

"The status of property, as separate or community property, is fixed as of the time when it is acquired. The word 'acquired' contemplates the inception of title***."

E. B. Clanton contends that the capital gain sought to be held community property was all "acquired" during the time the 1945 Act was in effect. We do not agree with this contention. It is true that the capital gain came into his possession during that time, but the word "acquired" has been held to mean the inception of title, as above stated.

In Wrightsman v. Commissioner of Internal Revenue, 111 Fed. 2d 227, the Circuit Court of Appeals for the 5th Circuit construed the word "acquired" as used in the Texas Community Property Law. It seems that Wrightsman was voted a salary of $50,000 for 1936 for managing the Wrightsman Oil Company. He had been in Texas only eight days at the time. The court held:

"Petitioner and his wife keep their books, and their tax returns are made on the cash receipts and disbursements basis. In the separate income tax returns each filed for 1936, a salary of $50,000.00 for that year voted to petitioner as president of the Wrightsman Oil Company, on December 30, 1936, was treated as community property, each reporting ½ of it as his income. The question for decision here is when, under the laws of Texas, where petitioner and his wife were on December 30th, residing, the salary was 'acquired.' Was it 'acquired' on the day it was voted to him and therefore, as claimed by them, community property, or was it, as found by the Commissioner and the Board, earlier 'acquired' while petitioner was still resident in Oklahoma and therefore all of it his separate property, except 8/365, that part of it earned in the eight days after the Wrightsman moved to Texas?"

"(1,2) It is settled law in Texas that as used in the statute (Vernon's Ann. Civ. St., art. 4619), 'acquired' refers to the origin or inception of the right or title, rather than the completion or ripening of it. Speer, Law of Marital Rights in Texas, 3rd Ed. Page 524, Sec. 438***."

And further said, at page 229:

"***Particularly *** may it not be doubted that under Texas law, he 'acquired' it, not when it was voted to him on December 30th, but as and when, pursuant to the understanding, he went about performing the duties and rendering the services he had agreed to perform and render."

In Commissioner of Internal Revenue v. Skaggs (5th Cir.) 122 Fed. 2d 721, the court had under coniideration these facts: L. L. Skaggs married in 1929 and had since resided in Texas. In 1926 he acquired stock in Safeway Stores, Inc., in lieu of an interest in that business prior to incorporation. In 1934 he sold the stock at a profit and reported the gain as community income. From 1926 to 1929 Skaggs had served as president or director of the corporation. In the first syllabus, it is said:

"Where taxpayer who was domiciled in Texas, after his marriage in 1929 disposed of stock of Texas Corporation in 1934, which he had procured in 1926, gain realized on sale of stock was taxable as taxpayer's separate income and not as community income."

There is no doubt but that the corporate stock involved here was acquired during coverture, but there is no evidence that the wife of E. B. Clanton contributed any of her funds or efforts to its acquisition or performed any services that contributed directly to its acquisition or enhancement in value. E. B. Clanton owned or claimed the stock when the 1945 Community Property Act became effective. The increase in the value of the stock is not shown to have been the result of efforts of the community. It seems more likely that its increase in value was the result of improved economic conditions and the efforts of the corporate entity.

The order of the Oklahoma Tax Commission is supported by competent evidence and is, therefore, affirmed.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur.

Rehearing Denied Feb. 17, 1953.