Gunter P. TURNER, an Incompetent Person, Kay Wilson, Jr., Guardian of Gunter P. Turner, an Incompetent Person, Plaintiffs in Error,

v.

The FIRST NATIONAL BANK & TRUST COMPANY OF MUSKOGEE, Oklahoma, Executor of the Estate of Fred. E. Turner, Deceased, Defendant in Error.

No. 36003.

Supreme Court of Oklahoma.

Dec. 20, 1955.

Rehearing Denied Jan. 31, 1956.

Forrester Brewster, Muskogee, J. Eben Hart and Wayne Bayless, Oklahoma City, for plaintiffs in error.

George W. Leopold, Julian B. Fite, Muskogee, for defendant in error.

HALLEY, Justice.

This appeal is from a judgment of the District Court of Muskogee County determining the rights of Fred E. Turner and Gunter P. Turner in property acquired by them while the Oklahoma Community Property Law of 1945[1] was in effect, being from August 1, 1945 to May 31, 1949, by agreement of the parties. This action is authorized under Section 83, 32 O.S. 1951.

Fred E. Turner and Gunter P. Turner were husband and wife for more than 50 years. Fred E. Turner died January 1, 1950. Gunter P. Turner had been incompetent for some years but had not been so adjudged and on September 24, 1946, she had executed a power of attorney to Fred E. Turner and he transacted all business for her after that date until his death in 1950. Mrs. Turner was declared incompetent on November 2, 1950, when Kay Wilson, Jr., was appointed her guardian and he is still acting in that capacity.

When the 1945 law became effective both Mr. and Mrs. Turner had accumulated considerable separately owned real and personal properties, all standing in their individual names, and while that law was in effect

1. 32 O.S.A. §§ 51–82 note.

Fred E. Turner received from property standing in his name from rents, interest and dividends, the sum of $310,604.54 and incurred expenses chargeable to his operations amounting to $148,530.87, leaving a net income of $162,073.66.

During the same period Fred E. Turner collected from properties standing in the name of Gunter P. Turner, rents, interest and dividends in the sum of $156,967.68, and in doing so incurred expenses chargeable thereto of $117,937.38, leaving a balance from Mrs. Turner's income of $39,030.30.

The First National Bank and Trust Company of Muskogee is the executor of the estate of Fred E. Turner, and filed this action for an accounting under the above named statute, and for a determination of the amount each party is entitled to receive from the income accruing during the period the Community Property Law of 1945 was in effect.

During the period mentioned, Fred E. Turner spent $25,560.67 for living expenses from his personal account and for the same period paid out of Mrs. Turner's account $27,658.51. He made donations during that period amounting to the sum of $40,254.61 from community funds, as will be discussed later. During the same period he erected a dwelling upon land separately owned by Mrs. Turner costing $33,859.99, and paid such sum out of money deposited in his name but also constituting community funds. All payments above mentioned were made from funds accruing from rents, dividends and interest during the period our 1945 law was in effect. If all of the expenditures mentioned above belong to the community, then Gunter P. Turner was entitled to one-half of the remaining cash, and against such sum Fred E. Turner should be credited with one-half of the donations from community funds, leaving a balance of community assets in favor of Gunter P. Turner.

While the parties litigant agreed that income from all rents, interest and dividends accruing to the separate property of each spouse during the time the Community Property Law of 1945 was in effect, constituted community property, the court found that such income did not constitute community property because not earned by the joint efforts of the husband and wife and that it in fact constituted separate property of the party from whose separate property it accrued.

The court did find that Mrs. Turner should be given judgment for the sum of $5,970, representing the sum given away by Fred E. Turner from income accruing to her separate property after she became incompetent. Judgment was so entered in favor of Mrs. Turner in the above amount. From that judgment the guardian of Gunter P. Turner has appealed.

It is clear that the principal issue is a correct interpretation of our 1945 Community Property Law. The facts are definite and many are covered by stipulations and an admittedly correct accounting.

Mrs. Turner was adjudged incompetent after the death of her husband and her present guardian appointed. Mr. Turner had formerly acted for her under a power of attorney executed in 1946.

■ The guardian for Mrs. Turner complains of the ruling of the court that the income accruing to Mrs. Turner from "rents, interest and dividends" during the effective period of our 1945 Community Property Law, did not constitute community property because the record did not disclose that either spouse expended any appreciable labor or effort in earning such income. It had been agreed by the parties that such income did constitute community property. The parties are not in full agreement as to the source of our Community Property Law of 1945 as stated by this court in Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575. From our study we are of the opinion that this law was adopted largely from Texas, even though some features appear to have been taken from the law of other community property states.

■ Separate property in Texas is that owned by either spouse before marriage, plus that acquired afterwards by gift, devise or descent. All other property acquired during coverture constitutes community property, including the income from the separate property of each spouse.

We think that the trial court perhaps placed too much stress upon the fact that the income being considered was not acquired strictly by joint industry and effort. It has often been denied that a housewife lends any appreciable aid when she does not engage in some form of manual labor or in the actual conduct of the business from which income is earned.

Contrary to the above view, the courts of Texas and other states have often recognized the endless tasks and tiring and monotonous burdens of the wife in maintaining a home, bearing children, and caring for their endless needs and demands. If income accruing from separate property is community property, it is not for the courts to declare such income separate property because it appears to have accrued without the joint efforts or shoulder-to-shoulder labor or industry of both husband and wife.

In 41 C.J.S., Husband and Wife, § 479a, it is said:

"* * * In certain of the community property states, under express constitutional provisions or by judicial interpretation of the general provisions defining community and separate property, the general rule prevails, subject to exceptions, in some instances, that the fruits and issues or the increase, income, and profits of separate property fall into the community. This was the rule under the community property system as established by the French and Spanish law. * * *"

In section 71 of De Funiak on the Principles of Community Property, it is said:

"* * * Under the Spanish law of community property, no matter whether the separate property of one spouse was the spouse's separate property at the time of the marriage or was acquired as separate property by that spouse after the marriage, the fruits and profits of that separate property were community property, belonging to both of the spouses by halves. * * * This was based on the conception that, although each spouse retained ownership of his or her separate property, each unselfishly and unhesitantly had at heart the success and well-being of the marital union and that, accordingly, the fruits and income of all property of each naturally were to be devoted to the benefit of the marital union."

"As indicated above, the principle of the Spanish community property system that fruits and profits of the spouses' separate property are community property remains the law of some of our community states, specifically in Idaho, Louisiana, and Texas; and likewise, it may be mentioned, in Puerto Rico and the Philippines. * * *"

In Swanda v. Swanda, supra [207 Okl. 186, 248 P.2d 579], it was said:

"* * * The basic idea of the Spanish law was that upon marriage the husband and wife become partners as to subsequent 'gains and acquests' with the profits of the partnership to be divided equally upon its dissolution. Both partners contributed to the partnership their time and efforts and the use of and revenue derived from their individual capital."

Section 3 of our 1945 Community Property Law is as follows:

"All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that which is the separate property of either as hereinabove defined, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved."

Section 4 of our 1945 Community Property Law is as follows:

"The wife shall have the management and control and may dispose of her separate property, both real and personal, and that portion of the common or community property consisting of her earnings, all rents, interest, dividends, and other income from her separate property, and all other common

or community property, the title to which stands in her name. The husband shall have the management and control and may dispose of his separate property, both real and personal, and all community property, the management, control, and disposition of which is not conferred upon the wife hereby."

It was further said in Swanda v. Swanda, supra:

"By statute the community property states of California, Arizona and Washington have declared that the increase, income and profits of separate property remain separate property. Oklahoma has no such statute and we conceive the true and equitable rule to be that the income and profits of real estate owned by either spouse, when produced by the joint effort, industry and management of both spouses, during coverture, to be community property. This rule does not deprive the husband of his separate real estate. It remains intact. Land, of itself, cannot produce a wheat crop. The production of a crop requires the expenditure of human labor and planning which in this case was furnished only by the community. The crop when produced was the result of the toil, talent, energy and productive talent of both husband and wife, while the husband's land was an aiding instrumentality of the production. * * *"

While it is true that Mrs. Turner was ill during most of the time our 1945 Act was in effect and that Mr. Turner acted for her in all business transactions under her power of attorney, we know of no case holding that the misfortune or illness of either spouse rendering him or her unable to perform his or her full share of the work necessary to earn income will deprive such spouse of his or her full share of the income accruing from the separate property of each during coverture. Such a rule would be contrary to the spirit of the civil or Spanish law providing for an equal division between husband and wife of income accruing from the separate property of each during coverture.

In Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010, 1018, it is said:

"The only assets of a community at its inception are the labor, skill, industry and talents of the spouses. The community owns no property, and could never own any, under the theory of the trial court, if the business carried on is farming separately owned lands of one or both spouses. If a husband at the time of marriage owned, say, a thousand acre farm that required all his time, industry and talent to operate, the community would never own a dollar's worth of property. The husband could accumulate separate property from its usufructs and by will dispose of to others the original lands and all accumulations, and the wife would be without remedy. She might labor on the farm, bear children and spend a life of practical serfdom with no hope of accumulating any property she could call her own, or legally claim an interest therein.

"The views here expressed have the approval of no less an authority than Professor Pomeroy, as stated in an article written by him and published in 4 West Coast Reporter 193 (1894), from which we quote as follows:

"'All the decisions which have discussed the nature of community property agree in stating this fundamental theory; that all property, not falling within the definition of separate property, acquired after the marriage by the labor either of the husband or of the wife, is nevertheless deemed to be acquired by the labor of both the spouses.'"

It should be borne in mind that Mr. Turner gave no evidence of recognizing the Community Property Law except where it enabled him to reduce their Federal Income Taxes. He had been and continued to be generous with his wife and is subject to no criticism for any of his acts. He doubtless believed that the Community Property Law of Oklahoma had for its principal object the reduction of Federal Income Taxes for husband and wife in Oklahoma, and he

appears to have followed it for that purpose only.

■ We think the trial court properly charged the estate of Mr. Turner for the charitable donations made by him from community property in Mrs. Turner's account after Mrs. Turner became ill and gave him a power of attorney to transact all business for her. The power of attorney does not authorize him to make donations on her behalf. However, since such property was community property, and not separate property as held by the court, Mr. Turner should only be charged with half of such unauthorized donations.

■ We conclude that all of the income accruing from interest, rents and dividends from the separate property of each during the effective period of our 1945 Community Property Law constituted community property.

It is agreed that the income so accruing during said period amounted to $228,762.07, and that $162,073.66 of this amount was on deposit in the name of Mr. Turner and $66,-688.41 in Mrs. Turner's account. Living expenses paid from community funds amounted to $53,219.18, leaving in his account $136,512.99 and in her account $39,-029.90, or a total of $175,542.89, or $87,771.-44 due to each, except that Mr. Turner's share should be reduced and Mrs. Turner's share increased by one-half of any sum improperly expended by Mr. Turner from community funds in making donations.

■ We hold that the amounts paid out of community funds by Mr. Turner for living expenses creates no new obligation on the part of Mr. Turner.

■ Mr. Turner spent $33,859.99 from community funds in erecting a home upon the separate land of Mrs. Turner. One-half of this amount belonged to Mrs. Turner and we think that she should, and if competent would not complain that her separate real estate was improved with community funds.

During the Community Property period Mr. Turner made donations out of community funds in his account in the sum of $30,434.61, one-half of which, $15,217.30 belonged to Mrs. Turner. She was incompe-

tent for a part of the period involved. Mr. Turner acted for her under a power of attorney which gave no authority for making gifts or donations, nor did the 1945 Community Property Law.

California is the only community property state giving husband right to manage all community property and giving husband right to make gifts or donations only on written consent of wife. Oklahoma has no such statute. Every other community property state, except Washington approves donations by husband, provided amount of gift is not unreasonable or constitutes a fraud upon the rights of wife. 41 C.J.S., Husband and Wife, § 534, p. 1153; Moody v. Smoot, 78 Tex. 119, 145 S.W. 285; Nixon v. Brown, 46 Nev. 439, 214 P. 524. California followed this rule prior to statute requiring written consent of wife.

■ However, the record reveals that substantial savings on Federal Income Taxes resulted to both of the parties by virtue of these donations. While the testimony in this regard is not as exact as it might have been, we are of the opinion that it is sufficient to establish that the tax saving effected was of such substantial amount as to offset the loss resulting to Mrs. Turner's estate by virtue of the donations, and that equity requires that Mr. Turner's estate not be charged with such unauthorized donations.

■ It is contended that the 1945 Community Property Law is unconstitutional. It was held constitutional by this Court in Swanda v. Swanda, supra.

■ The executor for Mr. Turner did not appeal and filed no cross-petition in error. He cannot complain of errors against him unless they are involved in errors alleged by the opposite party. Since the executor frankly admits that in his opinion the income here involved constituted community property, and we so hold, we think it is unnecessary to discuss a number of questions argued by the executor.

As stated above it was stipulated by the parties that at the close of the Community Property Law period, there remained a total of $175,542.89 of community funds.

That amount remained after all expenses of business had been paid and all living expenses. Of the above sum there was $136,512.99 in the account of Mr. Turner and $39,029.90 in the account of Mrs. Turner.

There had not been deducted donations made by Mr. Turner from community funds in his account in the sum of $30,-434.61, and from community funds in Mrs. Turner's account in the sum of $9,820, or a total of $40,254.61. He made other donations from his separate property which need not be considered here.

The above donations from community funds left in Mr. Turner's account $106,-078.38, and in Mrs. Turner's account the sum of $29,209.90.

Mr. Turner paid from his account the sum of $33,859.99 in erecting a home upon the separate land of Mrs. Turner, leaving a balance in his account of $72,218.39, or a total of $101,428.29 in both accounts. The difference between one-half of this sum and the $29,209.90 in her account is $21,504.24, and this amount is due Mrs. Turner.

However, the court found that of the donations made by Mr. Turner, he made donations from Mrs. Turner's account after she became incompetent in the sum of $5,970, and Mrs. Turner's account should be credited with one-half of this sum, or $2,985, making a total due Mrs. Turner in the sum of $24,489.24.

We find that the trial court had before it sufficient evidence to justify a finding that Mr. Turner should not be charged with donations prior to the date when Mrs. Turner became incompetent and to warrant his finding as to the amount that should be charged to Mr. Turner. Since we have held that the donations mentioned were all made from community funds, Mr. Turner should only be charged with one-half of the sum donated from Mrs. Turner's account after she became incompetent.

The judgment of the trial court is reversed with directions to enter judgment in favor of the guardian of Mrs. Turner in the sum of $24,489.24.