In re Appeal In the Matter of the ESTATE of James G. KEITH, Deceased.

William W. KEITH and Maggie B. Keith, Individually, and Maggie B. Keith, as Administratrix of the Estate of James G. Keith, Deceased, Plaintiffs in Error,

v.

Farris P. PAGE, Defendant in Error.

No. 37178.

Supreme Court of Oklahoma.

June 5, 1956.

424

Ed Blumhagen, Watonga, for plaintiffs in error.

Ted R. Fisher, Watonga, for defendant in error.

BLACKBIRD, Justice.

This appeal involves a controversy over certain portions of the estate of an officer in the United States Air Force who was killed while on overseas duty as a result of the airplane, in which he was riding, being shot down. He was reported missing July 29, 1953, but not officially reported dead until June 22, 1954. He left no will and no surviving issue, his only heirs being his parents, the plaintiffs in error, William W. and Maggie B. Keith, and his widow, the defendant in error. His marriage to the defendant occurred in California on January 30, 1953, approximately three days before he left the United States for overseas.

The portions of said intestate's estate involved in this appeal consist entirely of monies which accrued to, or were received by, him after his marriage. The issue between the above-mentioned parents and widow is whether these funds should be distributed solely to the widow, or only one-half to her and one-half to the parents. This question's determination hinges primarily on the proper interpretation and application of the following provisions of the second subdivision of Tit. 84 O.S.1951 § 213:

"If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or if he leave both father and mother, to them in equal shares: * * Provided, that in all cases where the property is acquired by the joint indus-

try of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, * * ".

As far as appears herein, during the administration proceedings in the county court and in the trial de novo on appeal to the district court, it was never contended that any part of the funds involved (which, among others, includes an item of more than $2,000 of intestate's "back pay" for the period between the above-mentioned dates when he was first reported missing and later reported dead, respectively) belonged to intestate before the marriage, or that their subsequent acquisition was by gift, devise or descent.

In the lower courts, the parents, hereinafter referred to as appellants, based their contention (as they do here) that in the distribution of the funds in question, they should share equally with the widow, hereinafter referred to as appellee, on the theory that said monies had not been "acquired by the joint industry" of the intestate and the appellee, within the meaning of the above quoted statute. They cite no unequivocal authority for this contention, but their counsel cites previous decisions of this court, and others, in which important (if not controlling) consideration was apparently given to facts showing which spouse's efforts produced or contributed to the acquisition of, the income or property. In support of their argument that none of the funds in question were derived, or contributed to, from appellee's "industry", they refer to the undisputed facts that during the less than three days, or only period in which the intestate and the appellee resided together, their abode was a guest house at an Air Force base in California, and that, during this period, appellee did not even prepare a meal or make a bed, for intestate; and that immediately upon his departure directly from said base, to his overseas duty station, appellee returned to her parents' home and resumed her premarital employment as cashier in a theater. Appellants' counsel concedes that on the basis of In re Stone's Estate, 86 Okl. 33, 206 P. 246, "it is not necessary for * * (a) surviving wife to have actually made monetary contributions toward the accumulation of the estate", as long as she had contributed "industry" in her "recognized sphere of marital activity * * * ". However, they say it is not enough, in order for a widow to inherit such estate exclusively, for her to have been married to the intestate; that, under the proper interpretation of the statute, she must, in order to be entitled to the whole estate, have contributed something, if no more than the ordinary work of a housewife, toward accumulating the estate. Their counsel insists that under the trial court's judgment ordering distribution of all the funds in question to appellee, this consideration was ignored, and, in effect, was held to be immaterial.

■ We think the trial court's judgment was correct on this feature of the case. In Black v. Haynes, 45 Okl. 363, 145 P. 362, this court, in discussing the particular statutory provision in question, said: "This proviso, in case the husband died intestate, leaving a wife surviving, creates an estate in the manner of community property." As to the rationale of appellants' argument that property accumulated by the sole efforts of one spouse without any "combined", or joint, effort or industry by the other, cannot create such an estate, we deem it appropriate to refer to the following quotation included in our opinion in Turner v. First Nat. Bank & Trust Co., Okl., 292 P.2d 1012, 1016:

" ' "All the decisions which have discussed the nature of community property agree in stating this fundamental theory: That *all* property, not falling within the definition of *separate* property, acquired after the marriage by the labor *either* of the husband *or* of the wife, is nevertheless *deemed to be* acquired by the labor of *both* the spouses." ' " (Emphasis ours.)

In an extensive note to the case of Nilson v. Sarment, 153 Cal. 524, 96 P. 315, 126 Am.St.Rep. 100, concerning the nature of community property, appears the following (at page 103):

"Said the supreme court of Nevada in Lake v. Lake, 18 Nev. 361, 4 P. 711, 7 P. [74]: 'We are satisfied it is not

necessary to prove that property is, in fact, the product of the joint efforts of the husband and wife in order that it may be declared community estate. If it is acquired after marriage by the efforts of the husband alone, but not by gift, devise or descent, or by exchange of his individual property, or from the rents, issues or profits of his separate estate, it belongs to the community. Such property is common, although the wife neither lifts a finger or advances an idea in aid of her husband. She may be a burden and a detriment in every way, or she may absent herself from the scene of his labors, know nothing of his business, and do nothing for him; still it is common.'"

In the early Louisiana case of Cole's Widow v. His Executors, 7 Mart.,N.S., 41, 18 Am.Dec. 241, 245, we find the following:

"On the argument, counsel went at some length into the principles on which the community of acquests and gains was established; and taking for the basis of such a rule the care and industry of both the spouses, they drew the conclusion that when it was established in evidence that one of them had not, or could not have, assisted in the acquisitions, the one so failing to contribute could not rightfully claim any portion of them.

"The doctrine of the community of acquests and gains was unknown to the Roman law; and, although now common, we believe to the greater number of the European nations its origin can not be satisfactorily traced. The best opinion appears to be that it took its rise with the Germans, among whom, at a very early period of their history, the wife took, by positive law, the one third of all the gains made during coverture. It is very probable that it was the real or presumed care and industry of the wife which first produced this legislation; and in an early state of society, the facts most probably fully justified such a rule. But in this, as in many other instances, legislation survives long after the causes which oc-

casioned it have ceased to exist, and the non-existence of these causes will not authorize courts of justice to refuse giving effect to the law. There are few, we believe, who think, at the present stage of society, that the wife contributes equally with the husband to the acquisition of property. If such cases exist they are exceptions to the general rule. And yet, in this state, neither idleness, wasteful habits, normal nor physical incapacity would deprive the wife of an equal share in the acquests and gains; for our code declares that every marriage in Louisiana superinduces, of right, partnership, or community, in all acquisitions."

█ Once it is recognized that the statutory proviso in question here pertains to an estate in the nature of common, or community, property and that, because of this nature, it makes no difference whether the wife has contributed any particular effort or industry, mental or physical, to its acquisition, and that a valid marriage is the only requisite to the existence of such an estate, it will be seen that the proviso applies to an estate like the one involved here, the same as to other estates, where the widow, as the wife, contributed nothing tangible to the estate's accumulation through "industry" in the strict sense of the word. A contrary interpretation of said statute would be arbitrary, discriminatory, and without valid foundation in the law. It would deny to untold numbers of servicemen's widows, who, through no fault of their own and solely because of the demands and exigencies of military service, have been unable to reside with their husbands, marital benefits that the law accords to other spouses. Both the law and public policy dictate against such interpretation. We therefore hold that the trial court did not err in rejecting it.

█ In the last argument appearing in appellants' brief, their counsel refers to the county court's finding that the date of intestate's death was July 29, 1953, and to the further fact that a part of the funds involved here consists of money disbursed by the Air Force as pay of the intestate

from that date to June 22, 1954, which, according to a letter in evidence from the Air Force Finance Center, was "the date evidence was considered sufficient to establish the fact of (his) death." They argue that this particular sum could not be considered as "acquired * * * during coverture", within the meaning of the statute in question, as there can be no "coverture" as to a dead person. According to opposing counsel, no such question was raised at the trial and the record seems to bear this out. We observe that in the journal entry of the judgment entered by the district court, or trial court, (which is the only judgment herein reviewed) no finding was made as to the date of intestate's death; and the only exception, or objection, noted by appellants herein was described in general terms as being "to that part of the * * * decree, which denies to them the right to receive a full undivided one-half in and to all of (the) net estate * * *". The record contains no indication of any contention that the intestate's Air Force pay for the period *after* July, 1953, stood on any footing, or fell into any category, different from his pay for the period of the marriage *before* that date, until appellants filed their motion for a new trial. Irrespective of whether we should regard appellants' interjection of this issue in the case as coming too late and/or as a change of theory on appeal, we think that, as the intestate was under "coverture" until the date of his death—whatever that date was—then whatever funds were, or could, under United States Army and Air Force regulations or Federal law governing such matters, be disbursed as his earnings or pay, would fall in the same category as other funds he had actually earned during the marriage, and were paid him for pay periods when there was no question as to the fact that he was living.

As we have found in none of the arguments presented on appellants' behalf, sufficient cause for reversing the trial court's judgment, it is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY and JACKSON, JJ., concur.