Edith Gayle PAGE et al., Plaintiffs in Error,

v.

Eugenia SHERMAN, Individually, and Eugenia Sherman, Executrix of Icle Victoria Stinson, deceased, Defendants in Error.

No. 38002.

Supreme Court of Oklahoma.

May 19, 1959.

Rehearing Denied June 23, 1959.

272

Ross Cox, Harry Hicks, Hollis, A. K. Little, Oklahoma City, for plaintiffs in error.

R. D. Miller, Hollis, Duke Duvall, Devier Pierson, Oklahoma City, for defendants in error. Duvall & Head, Oklahoma City, of counsel.

WILLIAMS, Vice Chief Justice.

This action was brought by Eugenia Sherman as executrix and sole heir and devisee under the will of her mother, Icle Victoria Stinson, deceased, against the

executors of her stepfather's estate (L. E. Stinson, deceased), and others, to establish an alleged community interest in certain property claimed by defendants as the sole property and assets of the estate of L. E. Stinson, deceased.

The trial judge made findings of fact and conclusions of law upon which judgment was entered in favor of the plaintiff and against the defendants from which judgment defendants appeal.

As the parties assume the same position here as in the trial court we shall generally refer to Eugenia Sherman as plaintiff, and the executors of the L. E. Stinson estate, et al., as defendants.

The Stinsons, at the time of their respective deaths, had been married for approximately 30 years. Mrs. Stinson died in January, 1952; Mr. Stinson died one month later. Mrs. Stinson had been previously married, Mrs. Sherman, a daughter by previous marriage, the plaintiff, being her sole issue. Mrs. Stinson left a will dated February 21, 1951, in which she devised all her property, real, personal and mixed, to Mrs. Sherman, her daughter.

Mr. Stinson left a will in which he devised all his property to the named defendants, excluding his stepdaughter, Mrs. Sherman, as a devisee or legatee.

The respective estates are now in the process of administration in the County Court of Harmon County, Oklahoma.

Mrs. Stinson's will was prepared by attorneys in Texas, presumably as she was the owner through inheritance of lands in that state, found by the trial judge to be of the value of $100,000. In explanation of making Mrs. Sherman her sole beneficiary, the will contained the following provisions:

"This disposition of my property ignores my husband who is well fixed financially and well able to take care of his own future needs and wants, and in fact is a disposition which has his full knowledge and approval."

Clause 2 of her will contained the following provisions:

"If my daughter, Eugenia Sherman (wife of John W. Sherman, Fort Worth, Texas) shall survive me by (30) days, then I give and bequeath unto my said daughter, Eugenia, *all of my property of every kind and character,* in fee simple and without any character of condition or limitation."

The first question presented is whether there is substantial evidence to support the trial court's finding that the net earnings of the various Stinson enterprises during the community property period (1945 to 1949) were community property and not the separate property of L. E. Stinson in which Mrs. Stinson could claim no interest. The record discloses that Mr. Stinson in 1934 was employed at a salary of $200 per month, and had no separate property of any character. The following year, from financial assistance furnished by his wife, he invested in a business known as the Hollis Farm Supply, and later in Hartley-Stinson property. The Hollis Farm Supply by the end of 1939 had a net worth of $10,560.26. At the end of World War II there was an increased demand for farm implements and supplies and the business prospered proportionately, so that, as reflected by the books and accounts of the L. E. Stinson enterprises, there was an increase in net worth from July 31, 1945, to May 31, 1949, of $132,401.42.

Upon controversial evidence, the trial court found that Mrs. Stinson made numerous loans to the Hollis Farm Supply and other businesses conducted in the name of her husband. The books of these enterprises disclose some of these loans were repaid, while others were not. Mrs. Stinson also assisted in the operation of the Hollis Farm Supply. This finding being supported by substantial evidence, we deem it unnecessary to set out at greater length the testimony upon which the court's conclusion is based that the increase in net worth of the Stinson properties resulted from the joint industry of husband and wife.

The court found that the net earnings of the Stinson enterprises during the community period were community property and therefore Mrs. Stinson had the right to and did will one-half interest in the community property to her daughter. After an accounting, it was determined that the half interest in the community property after certain credit allowances, was the amount of $60,440.77, reduced by plaintiff's remittitur in the amount of $3,058.46, for which sum judgment was entered in favor of plaintiff as executrix and individually, and against the executors of the L. E. Stinson estate and its beneficiaries, the named defendants.

■ Under defendants' proposition I, they contend Mrs. Stinson left her daughter only her separate estate; the ignoring clause (supra) disclaiming any interest in her husband's property that she might have acquired under the community property law. It is argued that from the face of the will it is obvious that Mrs. Stinson intended to devise only her separate property to her daughter. The premise is based upon the fact that her ranch land was located in Texas and that she employed Texas lawyers to prepare her will, which provided for the appointment of residents of that state as executors and trustees. Obviously Mrs. Stinson had her Texas lawyer prepare the will because part of her estate, the ranch land, was located in Texas. Moreover, she designated her daughter, Mrs. Sherman, her son-in-law and her sister, all residents of Texas, as executors and trustees for the very obvious reason of relationship and confidence in their ability to carry out the terms of her will. We are unable to concur in defendants' conclusion that these facts disclose an intent to limit the will to the disposition of Mrs. Stinson's separate property in Texas only. We think this view is supported by clause II of the will, supra, wherein it is recited that "I give and bequeath unto my said daughter, Eugenia, *all of my property of every kind and character, real, personal or mixed, wherever situated* in fee simple and without any character of condition or limitation".

Neither do we agree with defendants' contention that the ignoring clause (supra) disclosed an intent on the part of Mrs. Stinson to devise only her separate estate in Texas, or that by the clause she intended to and did disclaim any interest in her husband's property that she might have acquired under the community.

We find no ambiguity in the will, and are unable to read into it an intention to devise only her separate property, or that by the ignoring clause she disclaimed any interest in the community.

■ Under proposition II defendants contend:

"The undivided one-half interest in the husband's property that vested in his wife under the Community Property Law was not such an interest or estate that could be devised by her or pass to her heirs if she died leaving her husband surviving."

Mr. Justice Holmes, in Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 426, 55 L.Ed. 477, expressed the view that the wife's interest in community property under the law of New Mexico was more than a mere expectancy, and that under the issue there presented she was entitled to some sort of relief under general principles of law. He then added:

"It is not necessary to go very deeply into the precise nature of the wife's interest during the marriage. The discussion has fed the flame of judicial controversy for many years."

If defendants' position is well taken, the devisees and legatees under the will of L. E. Stinson take all of his separate property and all of the community property to the exclusion of Mrs. Sherman. If plaintiff's petition is well founded, then an individual one-half interest in the community property passes under Mrs. Stinson's will to her daughter, Mrs. Sherman. The answer depends upon the resolving of the question whether, under the Oklahoma Community Act, the surviving husband takes the wife's interest by right of survivorship, or whether her interest in the community property

passes to her heirs at her death or to her devisees by testamentary disposition.

Defendants, to support their claim that Mrs. Stinson's interest in the community property, where she predeceases her husband, goes to him by right of survivorship, rely upon decisions of the Supreme Courts of California and New Mexico, Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228, 36 L.R.A. 497; McKay v. Lauriston, Cal., 263 P. 1013; and In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769, and kindred holdings. The question stated in Re Chavez's Estate, was propounded as follows:

"Does the surviving husband take the wife's interest in the community property by 'inheritance' or 'other statutes' within the meaning of the Act of 1921? [The court answered its inquiry by stating] 'In this state the wife has no testamentary power over any part of the community property.'"

Sec. 26 (sec. 1840, Code 1915) controls the Chavez case by the New Mexico Statute, which provides:

"Upon the death of the wife, the entire community property, without administration, belongs to the surviving husband."

Certain exceptions stated in the section are not material to this discussion. So, under the New Mexico Community Statute, the wife is denied testamentary power of disposition of her interest in the community property, while the husband is possessed of the power to control by will the disposition of one-half interest thereof but is powerless to affect the wife's interest where she survives him. The California cases, supra, disclose that the right of the wife to take one-half of the community property depended upon whether she survived her husband. In other words, her right of expectancy, under the community only ripened into a vested right in the event her husband predeceased her. Her death, however, prior to that of her husband, made the happening of this contingency impossible, and thereupon the entire estate belonged to her husband without administration. It was upon this construction that the California Court held that the husband took all the community by right of survivorship. California has, however, amended its statute, Civil Code Sec. 1401, now West's Ann. Prob.Code, § 201, so that under the amendment, the wife can make testamentary disposition of her undivided one-half interest in the community.

As we have pointed out, the New Mexico and California cases can no longer be relied upon to support defendants' conclusion that Mrs. Stinson's interest in the community under Oklahoma law is a mere expectancy, which was dissipated by her decease prior to that of her husband.

■ Title 32, Sec. 3, of the Session Laws of Oklahoma, 1945, p. 118, 32 Okl.St.Ann. §§ 51–82 note, provides that all property acquired by either husband or wife during marriage and after the effective day of the Act (The Community Property Act) shall be deemed the community or common property of the husband and wife and each *shall be vested* with an undivided one-half interest therein.

We held in Davis' Estate v. Oklahoma Tax Commission, 206 Okl. 644, 246 P.2d 318:

"Under the Community Property law of Oklahoma, prior to its repeal, the wife had a present vested interest in one-half of the community property and not a mere expectancy, and upon death of the husband she did not take one-half of the community estate by inheritance, but in her own right as owner."

But defendants say that, even if Mrs. Stinson's interest in the community is a vested interest, that interest cannot pass under the statute of descent and distribution, for the reason that the title of the community interest was not in Mrs. Stinson at the time of her death, citing Title 84, § 213 of O.S. 1951. The first sentence of Sec. 213 reads: "When any person, having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed

in the following manner:" (citing the manner of succession).

It is argued that in order to bring the interest of the wife under the statute of descent it was incumbent on Mrs. Stinson, by recordable agreement or suit in the District Court to establish her title of record as required by the Act repealing the Community Property Law, Title 32, Secs. 1 and 2, Session Laws of Oklahoma, 1949, 32 Okl.St. Ann. §§ 51–82, 83. We reserve our analysis of the repealing act for discussion under defendants' proposition III. Defendants rely upon our discussion in Bowman v. Hulsey, 200 Okl. 593, 198 P.2d 421, as sustaining their contention that the descent of joint property of spouses applies only if *title* thereto was vested in the spouse who died first. In Bowman v. Hulsey, supra, we held:

"Where a husband and wife accumulate property by their joint industry during coverture the title to said property being vested in the husband and the wife predeceased the husband and the husband thereafter dies without issue and without disposing of the jointly acquired property, the proviso in the second subdivision of 84 O.S. 1941 § 213 is inapplicable and does not affect or govern its devolution."

That decision as well as our holding in Draughon v. Wright, 200 Okl. 198, 191 P.2d 921, and In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933, go no further than holding that: averment of joint acquisition of property without averment of title in spouse dying first is insufficient to make applicable the proviso respecting the devolution of jointly acquired property under Title 84 O.S.1951, § 213(2).

■ It is clear that under the cited section the statute is limited to cases where the spouse dying first had no title. The Oklahoma Community Act is not so limited, as it expressly provides for the disposition of the wife's interest in the community property, if she predeceases her husband, which interest passes by the law of descent and distribution or under the terms of her will. Sec. 15 of the Oklahoma Community Act (1945) provides that:

"Upon the death of the husband or the wife, the surviving spouse shall administer all community property in the same manner and with the same duties, privileges and authority as are vested in a surviving partner to administer and settle the affairs of a partnership upon the death of the other partner, as provided in Title 58, Oklahoma Statutes 1941, Section 255, provided that the surviving husband or wife shall not be disqualified from acting as executor or administrator of the estate of the deceased husband or wife; and provided further, that the survivor of the husband or wife shall pay out of the community property, except the homestead and exempt property, all debts of the community, whether created by the husband or the wife; and provided further, that when all debts of the community shall have been fully satisfied the survivor shall transfer and convey to the administrator or executor of the deceased one-half of the community property remaining to be administered and distributed as other property of the estate of either subject to the terms of the will of the deceased or under the laws of descent and distribution as the case may be, and thereafter all the interest of the surviving partner in said community property shall be that of a tenant in common; and provided further, that any interest in a homestead so conveyed shall not be subject to administration under the laws of this State, except in the manner provided by law at the time of the enactment of this Act."

We cannot, by paraphrasing, make its meaning more clear.

It is further argued that inasmuch as by the provisions of the Community Property Law the wife cannot, during her lifetime, alienate or encumber her interest in her husband's property (presumably the community interest), she is, under the statute

of wills, expressly excluded from testamentary power under Title 84 O.S.1951, § 44. The Proviso of the Section reads:

"Provided further, that no person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living * * *"

That contention is fully disposed of by reference to Sec. 15, supra, of the Community Act. We therefore conclude that Mrs. Stinson had a one-half undivided interest in the community property and that said interest passed to the plaintiff under the provision of her will.

Under defendants' Proposition 3 they assert that as Mrs. Stinson did not secure a recordable agreement with her husband or bring suit to establish her interest of record the act repealing the Community Property Law bars this suit; and that the burden of so establishing her interest of record rested on Mrs. Stinson and the right was personal to her and did not survive her death in favor of her executor or devisee.

The provision of the repealing clause, Title 32, Sec. 2, Session Laws of Oklahoma, 1949, 32 Okl.St.Ann. § 83, follows:

"Within one (1) year from the effective date of this Act, any husband and wife whose property or income was subject to the terms of the Act repealed by the foregoing section, may enter into a recordable agreement, specifying the rights acquired by either or each of them under the terms of said Act, altering those rights if they so desire, and describing the property affected, and may record the agreement in the office of the county clerk of their residence and in the office of the county clerk of each county where any of the affected property may be located. Should any husband and wife be unable to reach such an agreement, either may file an action in the District Court of the county of the residence of either of them for a determination of the rights as acquired under the repealed Act, and a certified copy of the judgment may thereupon be recorded in each county in which any of the affected property is located. The failure to make and record such an agreement, or to file such an action within one (1) year and record the judgment in due course thereafter, and in any event within three (3) years from the effective date of this Act, shall bar the husband or wife whose title or interest does not appear of record, or who is not separately in possession of the property, from any claim or interest in the property as against third (3rd) persons acquiring any interest therein. After three (3) years from the effective date of this Act, no action or proceeding of any character shall be brought to establish or recover an interest in property based upon the terms of the Act repealed, unless the interest has previously been established of record, as hereinabove provided."

Defendants argue that, as the interest of Mrs. Stinson had not been established of record by agreement or judgment and as she had not brought an action within the three-year limitation of the Act (by June 2, 1952), plaintiff's action is barred; that the intent of the Act was that the interest died with Mrs. Stinson and that plaintiff as her personal representative may not maintain the present action, citing Jones v. Farris, 180 Okl. 341, 69 P.2d 344. In that case we said:

"Where property jointly acquired during coverture is of record in the name of the husband, no question of resulting trust being involved, and the husband is still living, and the wife has taken no steps to determine her interest therein, it is not such a vested interest in her as will descend to her children upon her death intestate during the lifetime of her husband, so as to reduce his interest therein."

The rule there announced is inapplicable here, for as we have pointed out, Mrs. Stinson, under Davis' Estate v. Oklahoma Tax Commission, supra, had a vested interest, which, under Sec. 15 of the Com-

munity Property Act, descended to the heirs or devisees of the wife in the event she predeceased her husband. Adverting to the repealing act, it is clear to us that it was entirely optional with the husband and wife under the community to enter into the recordable agreement or file an action in the District Court, within one year from the effective date of the repealing clause, for a determination of the community interest. We do not agree with defendants' construction that the action is barred by limitation. The interest of Mrs. Stinson being a vested interest, had she lived, she could have brought the action on or before June 2, 1952, the expiration of the three-year period provided in the Act, but she having died on January 4, 1952, the action was timely brought by the executor of her estate, the present action being filed on May 26, 1952.

In the absence of such a recordable instrument or decree, neither husband nor wife could after the expiration of three years from the effective date of the repealing act maintain an action against *third persons* acquiring any interest in the community property.

Lastly, the repealing act provides that "after three (3) years from the effective date of the Repealing Act, no action or proceeding of any character (meaning between the husband or wife or their representatives) shall be brought to establish or recover an interest in property based upon the terms of the Act repealed, unless the interest has been previously established of record, as hereinabove provided." As here applied, the action was brought within the three-year period thus provided for in the repealing act.

Defendants, however, contend that the right to establish the wife's community interest in the property is a personal right which was wiped out at her death. That contention is made upon two grounds: first, that she failed to avail herself of the rights provided in the repealing act to enter into the recordable agreement, or institute the suit within the one-year period, and second,

that her interest not being evidenced by title in her could not, under Title 84, § 213, O.S.1951, pass to Mrs. Stinson's heirs by descent.

Our previous discussion of the Community Property Act applies equally here and needs no further elaboration.

On the second contention defendants place reliance on our decision in Jones v. Farris, supra, as hereinabove quoted. That decision is limited to the question of descent where jointly acquired property (not community property) is of record in the husband, and where the wife has taken no steps to determine her interest therein. It is there said the wife has not such a vested interest as will descend to her children upon her death intestate during the life of her husband.

As we have heretofore noted, the Community Property Act created a vested interest in the wife in the community property. In construing that Act we held in Davis' Estate v. Oklahoma Tax Commission, supra, that the community property was a present vested interest of which she was the owner. We therefore conclude that the action of Mrs. Stinson was timely and properly brought and is not barred by Title 32 O.S.1949 Supp. § 83.

Under Proposition 4 defendants contend that Mrs. Stinson had no investment in her husband's enterprises. Under Proposition 5 defendants contend that the Hollis Farm Supply and the half interest of Mr. Stinson in the Hartley-Stinson property were separate property of L. E. Stinson, and the increase therefrom remained separate property. Under Proposition 6 defendants contend that the increase in net worth of Mr. Stinson in Hartley-Stinson partnership was a capital gain which remained his separate property. Proposition 8 goes to the court's ruling upon disputed items of credit as Mr. Stinson's one-half interest of Mrs. Stinson's community property income.

■ As to defendants' contention that Mrs. Stinson had no investment or interest in her husband's enterprises, they are met with the premise that under Sec. 3 of Com-

munity Property Act, all property acquired by either husband or wife during the community period shall be deemed the community property of both, and each shall be vested with an undivided one-half interest therein.

As we have pointed out, the evidence supports the findings of the trial court that the net increase of the community property under the Act period was $132,401.42. Defendants' audit discloses that between 1944 and 1950 Mr. Stinson's enterprises received contributions from Mrs. Stinson in the amount of $16,200 and a like amount was returned to her during that period.

Audits made of Mr. Stinson's books and records by plaintiff and submitted in the record disclose that from 1935 to 1950 Mrs. Stinson advanced to the Stinson Enterprises, $22,699.76, and the sum of $18,145 was returned to her, leaving an unpaid balance of $4,554.76. In addition to financial aid given to her husband, the evidence as heretofore noted, sustains the court's finding that she materially assisted him in the operation of the Hollis Farm Supply business. We conclude that defendants' contention that Mrs. Stinson had no investment or interest in her husband's business is without merit.

In Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575, we sustained a wife's claim to an undivided one-half interest in the community, arising out of the income and profits from growing crops, notwithstanding title to the farm land stood in the husband.

In Turner v. First Nat. Bank & Trust Co., Okl., 292 P.2d 1012, 1015, we sustained a wife's interest in the community property upon the theory of "joint industry" although the evidence was limited to proof that the increase in net worth was computed by totaling the dividends, interest and rents received from their separate properties during the community, less expenses. In that case we said:

"If income accruing from separate property is community property, it is not for the courts to declare such income separate property because it appears to have accrued without the joint efforts or shoulder-to-shoulder labor or industry of both husband and wife."

Moreover defendants cannot limit Mrs. Stinson's participation in the community property by computing labor on the job, for during their 30 years of married life she performed the usual and customary duties of a faithful and industrious wife. We have consistently held that rights acquired by the joint industry of husband and wife are supported by proof that the wife's participation was limited to her customary household duties. See In re Stone's Estate, 86 Okl. 33, 206 P. 246, and Flowers v. Flowers, 117 Okl. 209, 245 P. 622.

Under defendants' Proposition 5 they contend that the properties here involved were separate properties of L. E. Stinson acquired before the Community Property Law went into effect and their increase remains his separate property, citing the Community Property Act, which in part provides:

"All property of the husband, both real and personal, owned or claimed by him before marriage or before the effective date of this Act, whichever is later, and that acquired afterwards by gift, devise, or descent, or received as compensation for personal injuries, shall be his separate property." Section 1.

We think defendants misconstrue plaintiffs' cause of action. Plaintiff is making no claim to the separate property of her decedent's husband acquired prior to the effective date of the Community Act. She bases her claim upon her undivided one-half interest in the income and profits received from the businesses during the community period. Income and profits are property within the meaning of the Community Act. We have examined our decision in Clanton v. Oklahoma Tax Commission, 208 Okl. 92, 253 P.2d 562 relied upon to support defendants' Proposition 5. That case is based upon the established fact that the husband sold shares of stock ac-

quired prior to the Community Act, and sold them subsequent to the Act. The case is based upon the findings that the increased value of the stock was not due to the joint industry of husband and wife and that therefore he could not claim the increase as community property for income tax purposes, but same should be treated as a capital gain. The record before us amply sustains plaintiff's position that the net increase in the Stinson properties resulted from the joint industry of husband and wife.

The weight of authority supports our conclusion that income and profits constitute community property. We think this result is fortified by our decision that active participation in the business is not required by the wife but that her interest may be established by her performance of household duties. Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575; Turner v. First National Bank & Trust Co., Okl., 292 P.2d 1012; Harmon v. Oklahoma Tax Commission, 189 Okl. 475, 118 P.2d 205. In the Turner case, supra, we said:

> "We conclude that all of the income accruing from interest, rents and dividends from the separate property of each during the active period of our 1945 Community Property Law constitutes community property." [292 P.2d 1017.]

Defendants, however, argue that the increase in net value of the L. E. Stinson Properties was not community property for the reason that these profits were in the main due to the economic conditions following World War II. That because of the greater demand for farming machinery, greater profits were made. That the profits did not accrue by reason of the joint industry of husband and wife. Berry v. Berry, 117 Cal.App.2d 624, 256 P.2d 646 is cited as authority for that construction. The California Court's decision is based upon its holding that the income and profits derived from separate property remains separate property. We pointed out in the Swanda and Turner cases, supra, that the

Berry case was controlled by the California statute and therefore inapplicable under the Oklahoma Community Property Statute. We find no support for defendants' position that increases in profits due to favorable economic conditions converts community property into separate property. That theory, if followed to its final analysis, would place an unreasonable burden upon a claimant under the Community Property Act to segregate profits from the joint industry from profits under varying economic conditions.

Under Proposition 6, defendants claim that the Hartley-Stinson Partnership was an investment so that the increase in the net worth of that interest was a capital gain which remained separate property of Mr. Stinson. Mr. Hartley testified that he and Mr. Stinson formed the Hartley-Stinson Partnership in 1944. The partnership engaged in selling farm machinery in Hobart, Oklahoma, doing the same kind of business as that conducted by Stinson under the name of Hollis Farm Supply. Stinson advanced $5,000 and Hartley $2,000 to finance the business. Later Stinson reduced his investment to the same $2,000. Mr. Hartley was in active charge of the business and drew a salary for his services. Mr. Stinson was credited an expense account only. Stinson assisted Hartley in keeping the books of the partnership and was consulted by Hartley on questions affecting the operation of the business. Net profits of the business were distributed equally to the partners. Upon this testimony defendants contended as Mr. Hartley was the active manager in charge of the business that the income was capital gains and Mr. Stinson's one-half interest must be treated as such and not as net income under the community. Defendants rely on Clanton v. Oklahoma Tax Comm., 208 Okl. 92, 253 P.2d 562 to support that contention. As we have heretofore pointed out, in that case this court held that there was no showing that the stock increased in value because of the industry of husband and wife so that the gain from the sale of capital asset, the asset itself being separate

property, did not constitute community property.

We are of the view that the evidence supports the trial court's finding that Mr. Stinson's one-half interest in the net earnings of Hartley-Stinson was income and not a capital gain, and was property included in computing the community interest of the respective parties. We think our conclusion finds support in our opinion in Harmon v. Oklahoma Tax Comm., 189 Okl. 475, 118 P.2d 205, where it was held that the taxpayers' interest in an oil and gas lease, when sold, should be treated as a capital gain, the lease being the separate property of the taxpayer, but that the income derived from the sale of oil from the producing lease during the community property period was income, constituting community property, and should be taxed as such.

Under Proposition 7, defendants contend that a part of the Hartley-Stinson profits which Stinson withdrew and placed in the Hollis Farm Supply should remain as Stinson's separate property. That contention is made upon defendants' proof that Stinson withdrew some of his profits in Hartley-Stinson which were placed into the assets of the Hollis Farm Supply. Colvin v. Colvin, 207 Okl. 12, 246 P.2d 744, is relied upon to sustain that contention.

In the case before us, upon substantial evidence, the trial court found that the profits received by Stinson from the partnership property was community property. The mere transfer of community funds by Stinson to serve the partnership venture, and withdrawal and return to Hollis Farm Supply did not, as contended by defendants, change Mrs. Stinson's vested right in the community fund.

Under defendants' last proposition they claim that the trial court erred in allowing them a credit of only $313.68 as Mr. Stinson's one-half interest in Mrs. Stinson's community property. Defendants submitted an audit of Mrs. Stinson's income for the years 1945 to 1949. That audit disclosed a total income of $19,577.90. From that amount she paid out $2,844.75 for income taxes; $9,262.65 as gifts to Mr. and Mrs. J. E. Sherman and used $6,843.13 for personal items, thus leaving the sum of $627.35. One-half of said amount was credited to Mr. Stinson as community property. There is no controversy as to the correctness of the foregoing figures. As to the item of $6,843.13, it is defendants' contention that the proof does not show that sum was used as living expenses by the family and that they should therefore be credited with one-half of such amount. Defendants refer to the expense as personal items. Plaintiff's evidence tends to support her theory that the items were in fact used as living expenses of the family and the court's finding in this regard will not be disturbed.

As to the gifts to the Shermans, defendants contend that they are entitled to credit for one-half of such amount, or $4,631.32, and cite in support of such contention Turner v. First National Bank, supra. Defendants do not contend, however, that such gifts were unreasonable or constituted a fraud upon the rights of Mr. Stinson, nor do they contend that such gifts were made at a time when Mr. Stinson was incapable of giving consent to the making thereof, as was the case in the Turner case, supra. Under such circumstances, there is no merit in defendants' contention.

Judgment affirmed.

HALLEY, JOHNSON, BLACKBIRD and BERRY, JJ., concur.

DAVISON, C. J., and WELCH, JACKSON and IRWIN, JJ., dissent.

IRWIN, Justice (dissenting).

To sustain the majority opinion, three propositions must be answered in the affirmative. These are: (1) That Mr. and Mrs. Stinson had not made an agreement whereby each would take that property, the title of which was in his or her name; (2)

That the right to institute an action for determination of property rights acquired under the Community Property Act survives the death of either the husband or wife; (3) That the one-year limitation in the repealing act is inapplicable, mere surplusage and of no force or effect, and the three-year limitation is applicable.

Title 32 O.S.1951 § 83, which repeals the Community Property Act, inter alia, provides:

"Within one (1) year from the effective date of this Act, any husband and wife whose property or income was subject to the terms of the act * * * may enter into a recordable agreement, specifying the rights acquired by either or each of them * * *altering those rights if they so desire* * *. Should any husband and wife be unable to reach such an agreement, either may file an action * * *."

It is my opinion that Mr. and Mrs. Stinson, after the effective date of the repealing act, considered and agreed that each would be the owner of that property in which title was in his or her name, and there was no reason to file an agreement specifying their rights, as that was of record and no necessity to file an action for a determination thereof. It is well to remember in this connection that we are concerned with two people who had lived together as husband and wife for thirty years. According to the testimony of the witnesses, complete harmony and accord, love and affection existed at all times between them, and each was ever mindful of the welfare, well-being, and financial condition of the other. To say that she ever, at any time considered taking from her husband one-half of the property he had accumulated by hard work and his business ability, or that he ever considered taking one-half increase of her separate property, are exactly opposite their actions through their thirty years of married life. She knew that to do so would place her husband in jeopardy of being unable to maintain himself in later years, for

at that time, had Mr. Stinson been stripped of one-half of the business he had built up, it would in common parlance, "wipe him out". This I do not believe she intended, and I think this theory is substantiated by the paragraph in her will which provides:

"This disposition of my property ignores my husband who is well fixed financially and well able to take care of his own future needs and wants, and in fact, is a disposition which has his full knowledge and approval."

This provision discloses complete agreement between Mr. and Mrs. Stinson as to the property rights of each and shows she was not claiming an interest in any property, the title of which was then in her husband and in my opinion, is the reason why there was not a recordable agreement entered into nor an action instituted by either Mr. or Mrs. Stinson. By the express provision in her will, Mrs. Stinson stated that her husband was well fixed financially and that her will had his full knowledge and consent. Both knew the value of their property and agreed as to the disposition of it.

Assuming however, no agreement concerning their respective property rights had been made, did a right of action for the determination thereof survive the death of Mrs. Stinson? The Community Property Law, as amended in 1945, which was repealed in 1949, provided for the administration of all community property upon the death of the husband or wife. However, in the act repealing the Community Property Law, no provision was made for the administration of an estate prior to an agreement being recorded or an action brought adjudicating the right each acquired. Sec. 83, supra provides:

"Within one (1) year from the effective date of this Act, any husband or wife whose property or income was subject to the act * * *. Should any husband and wife be unable to reach such an agreement, either may

file an action * * *. *The failure to make and record such an agreement, or to file such an action within one (1) year * * * shall bar the husband or wife whose title or interest does not appear of record, or who is not separately in possession of the property * * *.*"

The act of 1949 contains no provisions whatsoever, for an heir to bring such action, in fact the words heir, survivor, administration, descent, succession, testate, intestate, decedent or estate are not even mentioned in Sec. 83, supra. Had the legislature intended for such action to survive the death of either the husband or wife, it would have so stated.

Mrs. Stinson was in no better position, after the repeal of the act than where a wife claims an interest in her husband's property under the rule that the property was acquired by and through their joint efforts. Had she claimed an interest by reason of their joint efforts, it could only be established by agreement or by an action in court establishing her right; however, such action would have to be instituted during her lifetime and would not survive her death. She did not avail herself of the right given her under the statute, and failing to do so such right did not survive her. In Jones v. Farris, 180 Okl. 341, 69 P.2d 344, 346, we said:

"The legal title here was in the husband. Whatever rights were available to the wife, to assert or resolve an interest in the jointly acquired property, were never by her exercised, and it may be that she never would have cared to exercise them. And even had she done so, it is uncertain what particular fraction or portion she would have obtained. We cannot hold that this right which she had, as a wife, descended to her children, for it was a right which was available if she desired to use it but which apparently she chose not to use, and which therefore was not vested. As a general rule the community character of property jointly acquired by husband and wife is dissolved by the death of either spouse (5 R.C.L. 863), unless some statute prescribes otherwise, and we have no statute which would permit the children to inherit the property in suit upon the death of their mother."

If the right of action did survive, was the one or three-year limitation to institute the proceeding applicable? Sec. 83, supra, became effective June 2, 1949, and under the express provision of the act, the failure to make and record such an agreement or file an action within one year, would bar the husband or wife whose title or interest did not appear of record or who was not separately in possession.

Mrs. Stinson's daughter, the plaintiff herein, could not have any greater rights than Mrs. Stinson; and, since Mrs. Stinson's interest did not appear of record or was she separately in possession and this action was not filed within one year after the effective date of the repealing act, this action was barred by the express terms of Sec. 83, supra. If the one-year limitation is not applicable to a husband or wife whose interest does not appear of record or who is not separately in possession, it is mere surplusage and of no force and effect. In my opinion the three-year limitation, relied on by plaintiff, is applicable to those instances where third persons are involved who acquired a claim or interest in the community property or where the interest appears of record or the husband or wife is separately in possession, and is not applicable to the case at bar.

For the above reasons, I respectfully dissent.

I am authorized to state that Mr. Justice WELCH concurs in the views herein expressed.