### DAVIS et al. v. TRAVIS.

No. 25171. Nov. 26, 1935.

Twyford & Smith and William J. Crowe, for plaintiffs in error.

J. O. Whiteside, for defendant in error.

PER CURIAM. This suit involves the ownership and right of possession of lots in Oklahoma City, described as lots 13 to 16, in block 8, in Spencer's South Oklahoma City addition. Originally these lots were deeded by one Frank G. Martin to Dr. W. W. Beesley. Beesley neglected to pay the taxes, and on May 4, 1921, the original owner, Frank G. Martin, secured a tax deed to the property. By separate deeds in 1921 and 1922, Martin conveyed the property to S. M. Faughn. On December 10, 1931, S. M. Faughn conveyed the lots by quitclaim deed to L. L. Travis. On February 9, 1931, Dr. W. W. Beesley quitclaimed to J. C. Davis.

On March 19, 1932, L. L. Travis, as plaintiff, alleging possession of the premises, brought a suit against J. C. Davis and C. H. Rodgers, who was an alleged tenant of Davis, to quiet title to the property, deraigning his title through the tax deed issued May 4, 1921, to Frank G. Martin. J. C. Davis, the defendant, filed answer and cross-petition, alleging, among other things, that the tax deed of May 4, 1921, was void and that he was the owner by virtue of his quitclaim deed from W. W. Beesley, and was in possession by his tenant, Rodgers. He prayed for an order quieting his title. The attorneys representing Davis, on May 27, 1932, filed a petition in intervention on behalf of Dr. W. W. Beesley, in which plea Beesley elected to maintain the action for the benefit of Davis and adopted Davis' pleadings. On the 9th of June, 1932, Beesley filed a dismissal.

The trial started on May 27, 1932, and much evidence was taken. On July 8, 1932, plaintiff obtained leave and filed his first amended reply to the answer and cross-petition of Davis, in which, among other things, it was alleged that the deed to Davis was champertous and void, and that in November, 1930, Davis approached S. M. Faughn, the then owner, representing that he had a purchaser for an oil and gas lease on the lots in question and adjoining lots, and that Faughn turned over to Davis her abstract, from which Davis gleaned information that there was a defect in the title and that Davis located Beesley, the record owner; that Davis represented to Beesley that he was negotiating a sale of the property for Faughn and acquired a quitclaim to the premises and that the title so acquired inured to the use and benefit of the said Faughn.

The evidence disclosed that Beesley acquired title in 1914, had never seen the lots, and had never been in actual or constructive possession of the same and had at no time paid any taxes thereon. Martin and Faughn, his grantee, had at all times paid the taxes. Faughn testified to possession since acquiring her deed and that she had quitclaimed to Travis, reserving the right to remove her improvements which were on the land at the time the case was tried. Travis did not appear at the trial and gave no testimony. It did not appear from the evidence that he had ever been in possession of the premises. It further appeared that at the time the suit was instituted Davis was in possession of the property through Rodgers, his tenant.

On October 29, 1932, the court entered judgment for the plaintiff, Travis, finding, among other things:

"* * * That the said J. C. Davis so overreached his grantor, W. W. Beesley, that it would be against equity for the defendant J. C. Davis to retain the title conveyed to him by the said W. W. Beesley and that

such title as the said J. C. Davis 'acquired was taken by him in trust for Mrs. S. M. Faughn, and her subsequent grantee, L. L. Travis, plaintiff herein, and that the said J. C. Davis should be required to convey to plaintiff, L. L. Travis, all of the real estate hereinabove described, and on failure to so convey within five days from this date, this order should operate as such conveyance. And the court further finds that the defendant C. H. Rodgers and W. W. Beesley do not have or claim any right, title to or interest in said real estate or any part thereof, except that the said C. H. Rodgers is a tenant thereon, and the said W. W. Beesley has conveyed such title as he might have had to J. C. Davis for the benefit of Mrs. S. M. Faughn and her subsequent grantee, L. L. Travis."

Motion for new trial was duly filed, overruled and an appeal taken by the defendant Davis.

It will be noted that plaintiff commenced the action, basing his right to recovery upon the tax deed acquired by Martin, and subsequent conveyance to Martin and his grantees, but in the midst of the trial he abandoned his right to recover on this theory, and then recognized that the legal title was in Davis and took the position that Davis held said title for Faughn and her grantee, Travis.

On appeal the defendant urged that the tax deed was void and that all deeds in the chain of title set up by plaintiff were likewise void. The plaintiff on the other hand makes no contention that the tax deed was valid, but throughout the brief filed in the case insisted that the judgment of the court that Davis held the title in trust for Faughn and Travis should be sustained on the ground that Davis was the agent of Faughn at the time he took the title, and that Davis had perpetrated fraud on Faughn or Beesley in taking the deed in his own name.

We are not here concerned with the question of the validity of the tax deeds, and for the purposes of this case the deeds may be treated as void. The judgment must be sustained, if the facts and law warranted the trial court in holding that Davis was trustee for Faughn.

Faughn appeared as a witness in the case and was asked to explain in detail her dealings with Davis. Nowhere in the record does it appear that she ever talked to Davis, but the abstract and papers affecting the title were placed in the hands of one Wortham. The only conversation detailed by Faughn with Davis was that "they wanted me to give them $1,000 and one-half of the royalty for this quitclaim deed." When asked the direct question, if she had any conversation with Davis about fixing up the title to her property, she said: "No, that (conversation) was with Mr. Wortham." She was then asked if Davis was trying to sell the lease for her, and her answer was "No." No further effort was made to prove that Davis was in any wise concerned with Faughn in attempting to sell a lease on the land. It is evident, therefore, that there was a total failure of proof to show that Davis at the time he acquired the quitclaim deed from Beesley had any connection with Faughn.

A different situation exists as to the evidence with reference to the representations made by Davis to Beesley. There is evidence in the record from which the court could reasonably have concluded that Davis told Beesley he was taking the quitclaim in order to clear up the title for a third party. Davis denied any such representations.

As we see the case, the judgment must stand or fall upon the one proposition that false representations made by Davis to Beesley to secure the deed would make Davis the trustee for Faughn. The trial court took the position that a constructive trust was established by Davis' representations and conduct. With this position, we cannot agree.

A constructive trust may be established by parol evidence. Teuscher v. Gragg, 136 Okla. 129, 276 P. 753. This rule only applies in cases where some confidential relation exists between the two parties. In 65 C. J. 450. it is said:

"* * * A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title, as against another, provided some **confidential relation exists between the two,** and provided the raising of a trust is necessary to prevent a failure of justice."

In the same volume of C. J. at page 464. it is said:

"It is to be observed, however, that in the absence of equitable considerations, or a fiduciary relationship, fraud alone, whether actual or constructive, will not give rise to a trust, since, as has been pointed out, if

it were otherwise all persons claiming property under defective titles would be trustees for the 'true' owners."

Since, as shown by the evidence, no confidential relationship existed between Faughn and Davis, it is apparent that neither Faughn nor her grantee, Travis, is in a position to complain of the fraud, if it be a fraud, perpetrated upon Beesley. This rule is well settled in Oklahoma.

In Pluto Oil & Gas Co. v. Miller, 95 Okla. 222, 219 P. 303, Miller represented to the owners of certain lands that he was the agent of Pluto Oil & Gas Company for the purpose of taking a renewal of a lease on the premises prior thereto leased and operated by Pluto Oil & Gas Company. After acquiring the lease, Miller asserted ownership and sued the Pluto Oil & Gas Company to enforce his rights under his lease. The Pluto Oil & Gas Company took a lease from the same lessors and then sought to defeat the claim of Miller by asserting that Miller had perpetrated fraud upon the lessors. The Supreme Court said:

"We are unable to construe the allegations of the cross-petition as stating a defense or any fraud committed by the defendants against the plaintiff in error. There was no fiduciary relation existing between the Pluto Oil Company and Miller or his associates. There is an allegation that one of Miller's associates promised officers of the Pluto Oil Company that he would introduce one of the officers of the Pluto Oil Company to J. H. Land and Salina Land in order that they might obtain a lease. It is further alleged that said representative represented to the officers of the company that the Lands would not deal with the company without his advice. There is no allegation of any fiduciary relation existing between Miller or his associates and the company, or that the company employed said associate to secure the lease, or that said associate of Miller promised the company to procure a lease for them."

The court then held that where the party defrauded, to wit, the lessor, had waived or omitted to exercise the right to institute proceedings to recover the land of which he has been defrauded, such right did not inure to the benefit of subsequent creditors or purchasers.

The case of Davis v. Robedeaux, 97 Okla. 86, 222 P. 990, presents a like situation, where one Davis obtained a deed from an Indian by the name of Robedeaux. A month later George L. Miller obtained a deed from the same Indian covering the same land. Robedeaux joined by Miller, as plaintiff,

sought to vacate the Davis deed. Robedeaux dismissed his petition, but later withdrew his dismissal. It was contended in that case that Miller had the same right to maintain the action as Robedeaux, and that he could rely on the fraud perpetrated upon Robedeaux by Davis. The Supreme Court denied this contention and, following Pluto Oil & Gas Co. v. Miller, supra, held that Robedeaux alone could move to vacate the deed on the ground of fraud.

These cases deal with situations where the party asserting the fraud was a subsequent purchaser. In the instant case, it must be kept in mind that neither Faughn nor Travis, her successor, was a purchaser of the land from the record owner, Beesley. Faughn had no title whatever to the land, Travis had no title, hence neither was in a position to urge the fraud, if any, perpetrated by Davis on Beesley.

We hold, therefore, that since there is a total failure of proof that any confidential relationship existed between Faughn and Davis at the time Davis took his deed, and since Beesley at no time sought to vacate the deed which he gave to Davis, there is no evidence in the record to justify the finding that Davis took title in trust for Faughn..

In reply to the answer and cross-petition of Davis, it was asserted by the plaintiff that the quitclaim deed from Beesley to Davis was champertous and void. The trial court made no finding with reference to this defense based on champerty.

In the brief of Travis in the Supreme Court, no mention is made of champerty. Obviously, the plaintiff was in no position to urge upon the trial court, or the appellate court, that the deed from Beesley to Davis was for the benefit of Faughn, or her grantee, and at the same time urge that the deed on which they were basing title to the land was champertous and void. For this reason, the ruling announced in the case of Davis v. Manhard, 172 Okla. 85, 45 P. (2d) 1095, has no application in this case. The plaintiff in the case found himself in a position where he could not assert a title through the tax deed, nor did he or his immediate grantor have any deed from the record owner. If Faughn or Travis had acquired title from Beesley by a deed from Beesley, a different problem would have been presented. As the record stands, the plaintiff was not in possession of the property and at no time had any title thereto. Necessarily, suit to quiet title must fail.

In view of the foregoing, it follows that the judgment in this case is erroneous, and the prayer of the plaintiffs in error should be granted and the judgment of the trial court is reversed, with directions to grant plaintiffs in error a new trial.

The Supreme Court acknowledges the aid of Attorneys Redmond S. Cole, A. G. Cochran, and C. A. Coakley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and fact was prepared by Mr. Cole and approved by Mr. Cochran and Mr. Coakley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, and CORN, JJ., concur.