Lora Louise CATRON, Plaintiff in Error,

v.

The FIRST NATIONAL BANK & TRUST CO. OF TULSA, Oklahoma, a corporation, as Executor of the will and estate of J. M. Catron, deceased, and LeRoy Earl Catron, Donald Jesse Catron, Fred Charles Catron and Marvin Clay Catron, Defendants in Error.

No. 40475.

Supreme Court of Oklahoma.

April 25, 1967.

Rehearing Denied July 11, 1967.

Second Rehearing Denied Oct. 31, 1967.

Farmer, Woolsey, Flippo & Bailey, by Robert J. Woolsey, Tulsa, for plaintiff in error.

John Adkison, Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendants in error.

HODGES, Justice.

The plaintiff, Laura L. Catron, instituted this suit against the defendant, The First National Bank & Trust Co., Tulsa, Oklahoma, the Executor of the will and estate of J. M. Catron, and the defendants, LeRoy Earl Catron, Donald Jesse Catron, Fred Charles Catron and Marvin Clay Catron, all the sons of J. M. Catron, to establish a trust by operation of law for her benefit in one half of the estate of her deceased husband, J. M. Catron.

The plaintiff and Mr. Catron established a common law marriage in 1937. They went through a ceremonial wedding in Arkansas in 1952. Both parties had been married previously. Mr. Catron had four sons by his first marriage, defendants in this action. Mrs. Catron had one son by her first marriage, not involved in this dispute. Mr. and Mrs. Catron had no children from their union. Mr. Catron was 65 years of age at his death, on December 29, 1959, and Mrs. Catron was 53.

At the time of their marriage in 1937, neither Mr. Catron nor the plaintiff possessed any substantial assets, but during the period of the marriage a sizable estate was accumulated. The estate was valued at $286,821.76 by the appraisal of the executor bank, and has subsequently appreciated in value to more than $400,000.00. Record title to all property forming the estate was in the name of Mr. Catron except the homestead which was in joint tenancy with the plaintiff. It is clear that Mr. Catron possessed keen business judgment, an aptitude for investment, and a talent for making money. Mrs. Catron was not gainfully employed during the marriage, and contributed little, if any, direct service to the business endeavors of her husband, but it is not disputed that she fulfilled her marital duties

and responsibilities as a wife to the deceased.

Under his will, Mr. Catron left one third of his estate in trust to his wife, the plaintiff, and two thirds of his estate to be divided equally among his four sons, the defendants. Ownership of the homestead, valued at over $25,000.00, vested in the plaintiff by virtue of the joint tenancy arrangement. The will provided that the plaintiff should receive $1,000.00 per month for life from the portion of the estate held in trust for her. The plaintiff elected to take the property devised to her under the provisions of the will rather than her statutory share which would also have been one third of the estate (free of the trust). The plaintiff approved the general inventory and appraisement of the estate by the Executor and the estate tax returns. Later the plaintiff concluded that her share of the estate would probably be insufficient to provide her an income of $1,000.00 per month for the remainder of her life. She then instituted this suit asserting that one half of the estate was being held in trust for her by operation of law and should be set aside to her as the owner thereof. She further contends that the half of the estate belonging to her husband should be charged with $80,000.00 lost in useless oil ventures and with $12,000.00 in gifts made by the deceased to his sons without her consent.

In addition to the claims of one-half ownership and that Mr. Catron's portion of the estate should be charged with $92,000.00 expended in oil ventures and gifts, the plaintiff continues to assert the right to receive one third of the remainder of the estate, in trust, under the terms of Mr. Catron's will. The net effect of the plaintiff's claims is that she should receive approximately three fourths of the property of the estate in addition to the homestead. The defendants contend that the plaintiff's entitlement is limited to one third of the estate and the homestead, as provided in Mr. Catron's will. Assuming the present value of the estate to be approximately $400,000.-00, the plaintiff's position is that she is entitled to about $300,000.00 and the four defendants are entitled to about $25,000.00 each; while, under the terms of the will, her share would be about $133,333.00, and each of the defendants would receive about $66,667.00.

The trial of this case consumed seventeen days. Both parties presented numerous witnesses including friends and relatives of Mr. and Mrs. Catron, and business associates of Mr. Catron. Both the plaintiff and the defendants introduced testimony of, and exhibits compiled by, certified public accountants in an attempt to determine the sources of income and to trace the use of funds from various individual and joint bank accounts of Mr. and Mrs. Catron. Because of a lack of records, either lost or destroyed, including bank statements and cancelled checks, particularly for the years from 1945 through 1949, the conclusions of the accountants for both parties is to a considerable extent based on conjecture and speculation. The evidence presented was in conflict to a significant extent and the inferences drawn by the parties from the evidence not in conflict are irreconcilable.

The trial court concluded that the evidence was insufficient to establish a trust by operation of law as alleged by the plaintiff, that the ownership of the property comprising the estate was vested in the deceased, and that judgment should be rendered for the defendants. The plaintiff appeals to this court from that judgment and the order of the trial court overruling her motion for a new trial.

On appeal the plaintiff contends that she is the beneficiary of a trust arising by operation of law for an undivided one-half interest in all property acquired by her husband in his name by virtue of the fact that this property was purchased by her husband with their joint assets. 60 O.S. 1961, § 136(3). According to the plaintiff, this trust for her benefit may be considered to be either a resulting trust or a constructive trust.

A resulting trust was defined in Gammel v. Enochs, Okl., 353 P.2d 1106:

"A resulting trust arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the grantor whom equity deems to be the real owner."

The foundation of a resulting trust is consideration. Both under the common law and under the provisions of 60 O.S.1961, § 137, a trust is presumed to result in favor of a person by or for whom payment is made when title to real property is taken in the name of another. This court has held in a number of cases where property was conveyed to a husband in consideration of money or assets furnished by, or belonging to, his wife, that a trust results in favor of the wife, absent evidence of circumstances showing a contrary intention. Mendenhall v. Walters, 53 Okl. 598, 157 P. 732; First Nat'l Bank v. Sanders, 169 Okl. 192, 35 P.2d 889; Guyer v. London, 187 Okl. 326, 102 P.2d 875; Wilhelm v. Pfinning, 191 Okl. 321, 129 P.2d 580.

A constructive trust is imposed to prevent unjust enrichment where the party holding title to property acquired it in some unconscionable manner. In Dike v. Martin, 85 Okl. 103, 204 P. 1106, this court said:

" * * * All instances of constructive trusts may be referred to what equity denominates fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. * * *"

See to the same effect Cassidy v. Hornor, 86 Okl. 220, 208 P. 775; Edwards v. Edwards, 108 Okl. 93, 233 P. 477; Peyton v. McCaslin, Okl., 417 P.2d 316.

The plaintiff concedes that she has the burden of establishing the facts giving rise to the trust, whether it is a constructive trust or a resulting trust, by evidence that is clear, unequivocal, and decisive. Boles v. Akers, 116 Okl. 266, 244 P. 182; Staton v. Moody, 208 Okl. 372, 256 P.2d 409; Davis v. National Bank, Okl., 353 P.2d 482. In reviewing the decision of the trial court in this case of equitable cognizance, we will examine the record and weigh the evidence to determine if the proof presented by the plaintiff conforms to this required standard, but we will not reverse the decision of the trial court unless it is clearly against the weight of evidence. See Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044; McCrory v. Evans, 192 Okl. 649, 138 P.2d 823.

Review of the record fails to disclose any basis for imposing a constructive trust in favor of the plaintiff. There is no evidence of fraud, duress, abuse of confidence, or other misconduct by Mr. Catron in his dealing with the plaintiff and the trial court so found. The basis of the plaintiff's claim is that one half of all funds invested by Mr. Catron in property comprising the present estate belonged to her. The defendants, on the other hand, contend that the plaintiff had no assets of her own, and furnished none of the consideration for this property. It is readily apparent that to prevail, the plaintiff must establish by clear and unequivocal evidence that she did in fact furnish a portion (she alleges one half) of the consideration for the property comprising the estate of the deceased. As seen above, such evidence would support a resulting trust, rather than a constructive trust.

We turn now to an examination of the facts relied upon by the plaintiff to establish a resulting trust in her behalf.

Mr. Catron began to prosper in 1941 when he started a business known as J. M. Catron Laboratory, which produced syrups and flavor concentrates used in soft drinks. During this period Mr. Catron was also employed as the assistant manager and plant foreman of the General Beverage Company, owned by Charles R. Flexner and Marion G. Flexner, husband and wife. Prior to 1941 neither Mr. Catron nor the plaintiff possessed any substantial assets, but by August, 1942, Mr. Catron had accumulated over $26,000.00 in cash. On August 15, 1942, Mr. Catron and Mr. Flexner agreed to merge their separate companies into a business that they operated under the name of C–F Beverage Company, which bottled and sold soft drinks at wholesale. Mr. Catron continued in this business until 1945 and it too operated profitably.

The plaintiff contends that she was an equal partner with her husband in both companies and introduced copies of partnership agreements to that effect. Defendants contend that there was no actual partnership but that Mr. Catron assigned the plaintiff an interest on paper in order to secure the advantage of reduced federal income tax gained by splitting income because there was no provision in the Internal Revenue Code at that time allowing a husband and wife to divide income on a joint return. Despite the partnership agreement, the Internal Revenue Service refused to recognize the plaintiff as an equal partner and reduced her interest to one third. Defendants further established that plaintiff performed little, if any, service for either company and made no capital contribution for her alleged interest.

Both parties presented additional conflicting evidence on the issue of plaintiff's alleged partnership interest. However, we need not decide whether the purported partnership was valid or was a mere sham for tax purposes. In either event the plaintiff cannot prevail in this action.

The interest of Mr. Catron and Mrs. Catron, if any, in C–F Beverage Company was sold on January 2, 1945, to a third party for $80,000.00. Plaintiff alleges that, at that time, the net worth of Mr. Catron and herself was in excess of $50,000.00 each, and was approximately equal. The defendants assert that the value of the estate exceeded $100,000.00 and was solely owned by Mr. Catron. Subsequent to the sale of the beverage company, Mr. Catron began to explore the possibility of real estate investment in Tulsa, Oklahoma. The petition of plaintiff alleges that in 1946, plaintiff, having full confidence in the business ability of Mr. Catron, transferred most of her funds to him to invest for their mutual benefit. It is apparent, therefore, that both the plaintiff and the defendants agree that Mr. Catron possessed full control and discretion over the funds and assets of the estate from early in 1946. The great increase in value of the estate came in the years 1946, 1947, and 1948 and to a lesser extent in 1949. By fall, 1949, the value of the estate exceeded $300,000.00. This great increase in wealth coincided with the period when the law of community property prevailed in this state. The effect of this law and the subsequent repealing statute govern the disposition of this case.

The mandatory Community Property Act of this state was approved April 28, 1945, and became effective 90 days after April 26, 1945, the date of adjournment of the enacting Legislature. See Okl.Sess. Laws 1945, p. 118, §§ 1–18, 32 Okl.St.Ann., §§ 51–82 note. The Act was repealed on June 2, 1949. Okl.Sess.Laws 1949, p. 229, § 1. Sections 1 and 2 of the Act classify separate property as that property owned separately by either the husband or the wife prior to adoption of the Act and all property acquired thereafter either by gift, devise, or descent, or as compensation for personal injuries. Section 3 of the Act then provides:

"All property acquired by either the husband or wife during marriage and after the effective date of this Act, except that

which is the separate property of either as hereinabove defined, shall be deemed the community or common property of the husband and wife, and each shall be vested with an undivided one-half interest therein; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved."

Previous judicial decisions have concluded that, except as specified in Sections 1 and 2 of the Act, all income and profits from whatever source, including the separate property of either spouse, became community assets with ownership vested equally in the husband and the wife. Page v. Sherman, Okl., 341 P.2d 270; Turner v. First Nat'l Bank & Trust Co., Okl., 292 P.2d 1012; Swanda v. Swanda, 207 Okl. 186, 248 P.2d 575; Crane v. Howard, 206 Okl. 278, 243 P.2d 998. In the Swanda case, this court cited with approval the following definition of community property:

"In the absence of a statute to the contrary, community property includes all property acquired by either spouse, during marriage, by toil, talent, energy or productive faculty and the fruits and profits of the separate property of either spouse. Logan v. Logan, Tex.Civ.App., 112 S.W.2d 515."

Most of the identifiable income of the Catrons from 1946 through 1949 was from rentals and profits on the sale of real property in Tulsa, Oklahoma. The only other identifiable source of income was a small amount from partnership interests of Mr. Catron and the plaintiff of short duration in the Tulsa Reo Company and the Terrell Bottling Company. There can be no doubt, in view of the above cited decisions, that all this income was community property. There was also approximately $150,000.00 in income from unidentified sources during this period of time. While the source of this income is uncertain, it must be attributed to Mr. Catron inasmuch as it is undisputed that Mrs. Catron had very little

income and received no compensation for injuries and no gifts, devises, or inheritance from any source (including her first husband) during her marriage to Mr. Catron. These unidentified earnings of Mr. Catron became assets of the community, along with the rental income, profits from the sale of realty, and any other income received by the Catrons during this period.

Accounts for both plaintiff and defendants attempted to trace income and expenditures from various bank accounts of the Catrons during the period of community property without success. The rental income, the profits from the sale of realty, the income from unidentified sources, the separate property of Mr. Catron and the alleged separate property of plaintiff were combined and commingled to such an extent that none of this property could be traced through its various changes and mutations in form. However, the plaintiff did attempt to trace her purported separate funds into seventeen nonhomestead property acquisitions by Mr. Catron. She was able to show only a small portion of the consideration for the purchase or improvement of the property involved in four of the transactions. She established no pecuniary interest in the remaining thirteen transactions. Accepting this evidence, her total investment was less than $7,500.00, while the amount attributable to Mr. Catron or unknown sources was more than $250,000.00. The evidence further established that each of the four parcels purchased or improved, in part, with the plaintiff's purported separate funds had subsequently been sold and that the proceeds could not now be identified. The numerous realty transactions, the intermingling of funds in various bank accounts, the lost or missing records, coupled with the indiscriminate use of funds without regard to source by Mr. Catron in acquiring and improving real estate, make the task of tracing and resegregating assets a manifest impossibility in this case. It is pertinent to observe that there is no evidence that the plaintiff ever ob-

jected to the commingling of assets in this manner by her husband, or that she attempted to hold her alleged separate property apart from the community.

 Even if it is assumed that the plaintiff and Mr. Catron separately owned approximately $50,000.00 in assets in 1945, these assets became so merged and amalgamated with community property of considerably greater value. that the separate property lost its identity. See Colvin v. Colvin, 207 Okl. 12, 246 P.2d 744. Under such circumstances, all of the assets must be considered to be community property. This rule is expressed as follows in 41 C. J.S. Husband and Wife § 490:

"A separate consideration must be traced into the property acquired to overcome the presumption in favor of the community. Where separate and community property have become confused, blended, or commingled, the whole will be presumed to be community property unless the community component is comparatively small. * * * "

And in 15 Am.Jur.2d, Community Property, § 21, it is stated:

"If separate property is so intermingled with community property that its identity is lost, the entire mass ordinarily becomes community property, unless the community interest is inconsiderable."

See to the same effect: Tarver v. Tarver, Tex.Civ.App., 378 S.W.2d 381, aff'd, Sup., 394 S.W.2d 780; Mueller v. Mueller, 144 Cal.App.2d 245, 301 P.2d 90; Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459, 29 A.L.R.2d 518; Mumm v. Mumm, 63 Wash. 2d 349, 387 P.2d 547; de Funiak, Principles of Community Property, § 61; 4A Thompson, Real Property, § 1952, p. 328 (1961 ed.). Upon the date of the repeal of the Community Property Act, the separate assets of Mr. Catron and the purported separate assets of the plaintiff had lost their identity among the greater assets of the community and the aggregate became community property. At that time, title to all properties, except the homestead and a small joint bank account of less than $300.-00, was in Mr. Catron's name as was title to all property acquired thereafter until the date of his death.

The repealing statute, 32 O.S.1961, § 83, provided that a husband and wife could enter into a recordable agreement, specifying the rights of each acquired under the repealed Community Property Act, or that either could bring an action for determination of these rights if they were unable to reach an agreement. The statute then provided:

"* * * The failure to make and record such an agreement, or to file such an action within one (1) year and record the judgment in due course thereafter, and in any event within three (3) years from the effective date of this Act, shall bar the husband or wife whose title or interest does not appear of record, or who is not separately in possession of the property, from any claim or interest in the property as against third (3rd) persons acquiring any interest therein. After three (3) years from the effective date of this Act, no action or proceeding of any character shall be brought to establish or recover an interest in property based upon the terms of the Act repealed, unless the interest has previously been established of record, as hereinabove provided. Laws 1949, p. 229, § 2."

 The plaintiff did not comply with the mandatory provisions of the statute to protect and preserve her interest in the community property. In fact, she had taken no action of any sort to establish her property rights prior to this suit, filed on January 16, 1961. This suit was commenced more than eight years beyond the statutory period specified by our Legislature in the repealing statute for instituting actions to determine property rights in community property. The plaintiff is therefore barred from recovering any interest in the community property and ownership thereof vested exclusively in Mr. Catron, the owner of record. Page v. Sherman, Okl., 341 P. 2d 270 (majority and dissenting opinions); Hiskett v. Wells, Okl., 351 P.2d 300.

The plaintiff has asserted no basis for ownership of property acquired subsequent to 1949 other than the fact that this property was acquired with assets owned jointly by herself and Mr. Catron. Having determined that she has forfeited such joint ownership, she is left without any basis to establish that she has furnished one half of the consideration for property purchased after 1949. As seen above, such consideration is essential to the existence of a trust in her favor.

The plaintiff attempts to escape application of the repealing statute by asserting that Mr. Catron orally agreed that she would be an equal partner in the Tulsa real estate venture. She then argues that one half of the profits from the partnership were her separate property, not community assets, and were therefore not subject to the terms of the repealing statute. We cannot agree. Even if there were such a partnership, the income and earnings therefrom would be deemed community assets absent an agreement to the contrary. Community Property Act, § 3, supra. The record contains no evidence that the plaintiff and Mr. Catron agreed that the community property laws should not apply to income earned from real estate investments and that each would hold one half of the earnings as separate property. On the contrary, income tax returns of the Catrons, commencing in 1946, reflected property rentals and profits on sales as belonging to the community. In any event, the evidence of a partnership between the Catrons to invest in real estate is not convincing. There was no written evidence of such an arrangement. There is testimony from friends and relatives of the plaintiff that Mr. Catron referred to the property on various occasions as "ours" or stated that "it belongs to Louise (plaintiff) and me." Counterbalancing such comments were statements to other persons that the property is "mine" or "I own it." These statements are not conclusive. In evaluating the plaintiff's proof in support of the partnership allegations, we must recognize the rule that oral testimony of alleged oral statements against interest made by deceased persons is the weakest sort of evidence. In re Fullerton's Estate, Okl., 375 P.2d 933; Ward v. Ward, 197 Okl. 551, 172 P. 2d 978. Furthermore, the credibility of witnesses and the weight and value to be given to conflicting or inconsistent testimony are matters primarily for determination by the trial court. Thompson v. Smith, Okl., 420 P.2d 526; C. I. T. Corp. v. Edwards, Okl., 418 P.2d 685. There is considerable evidence to refute the existence of the alleged partnership. In wills executed in 1947, 1949, 1951, and 1954, Mr. Catron expressly declared that ownership of property acquired during the marriage was vested exclusively in him. These declarations in such significant documents would seem to be the most compelling type of proof that Mr. Catron had not agreed to a general partnership arrangement to acquire real estate for the joint benefit of the plaintiff. It is also clear that Mr. Catron continued to assert exclusive ownership of the property until the date of his death. In several conversations with a trust officer of the executor bank commencing approximately eight months prior to his death, Mr. Catron stated that all of the property, other than the homestead, belonged to him and should be included in his estate. Further, the fact that, prior to instituting this suit, the plaintiff approved the general inventory and appraisement of the estate and the estate tax returns, reflecting ownership of the property solely in the deceased, must be considered admissions against her position in this litigation and the trial court so found.

We conclude (1) that the determination of the trial court that there was no partnership between the plaintiff and Mr. Catron to acquire realty is not against the clear weight of the evidence and (2) that the statute repealing the Community Property Act bars the plaintiff from claiming an interest in the property comprising the estate of the deceased.

The plaintiff is also barred from recovery by virtue of the application of the general five year statute of limitations to this action to establish a trust by implication of law. 12 O.S.1961, § 95(7).

The plaintiff admitted that in 1947, Mr. Catron showed her his will, prepared in November of that year, and that she read the following clause:

"* * * in truth and in fact, all properties standing in the name of Lora Louise Catron, my wife, and all property jointly acquired or standing in our joint names is my property, and my said wife has no interest therein, whether it has been purchased prior to or has been purchased subsequent to the enactment of the Community Law of this State; save and except the homestead which is held jointly by survivorship and which shall pass to my wife should my death occur prior to the death of my wife; it being the further intention of this Will that the total amount that my wife shall receive under this Will shall not in any manner exceed the aggregate amount of the value of all property standing in her name and the difference between such amounts and one-third of my property, and all property that may be standing in the name of my wife on the books and records, or in any other manner shall be administered by my Executor in the same manner and to the same extent, with full power of disposition by him as though no property was in the name of my wife. * * *"

There was a proviso to this will by which the plaintiff was to acknowledge, by affixing her signature, that she had read and agreed with the provisions contained in the will. The plaintiff testified that she refused to sign her name to the proviso because she disagreed with the clause stating that exclusive ownership was vested in her husband. Upon reading the foregoing clause in her husband's will, the statute of limitations commenced to run against her.

The plaintiff correctly contends that to set the statute in motion against her there must be a clear repudiation of the trust and the repudiation must be brought to her knowledge. McGann v. McGann, 169 Okl. 515, 37 P.2d 939; Guyer v. London, 187 Okl. 326, 102 P.2d 875. However we are unable to agree that the repudiation in the instant case does not meet these two requirements. First, the repudiation of the purported trust relationship was clear and definite. It is difficult to imagine a more positive repudiation of a trust than a written declaration by the trustee that all of the property belongs to him and that the beneficiary has no interest therein. Second, it is clear that the plaintiff was fully aware of the repudiation. Her express reason for refusing to sign the proviso to the will was that she disagreed with the clause stating that her husband owned all the property. In Wilhelm v. Pfinning, 191 Okl. 321, 129 P.2d 580, this court stated:

"The statute of limitations did not commence to run until plaintiff became aware of a violation of the trust relationship. Guyer v. London, 187 Okl. 326, 102 P.2d 875. *The attempted devise of the beneficial interest in the land would ordinarily constitute a breach of the trust, and notice of such breach would start the statute.* But the devise in this case was not sufficient to put the plaintiff on notice. * * *" (Emphasis supplied).

As seen, there can be no doubt in the instant case that the plaintiff was put on notice of the repudiation of her purported interest by her husband's will.

Next the plaintiff contends that the statute of limitations should not run in favor of a husband against a wife for "all she (plaintiff) could have done was sue him for a divorce." On the contrary, the common law disabilities of married women have been removed in this state and a wife is fully competent to sue her husband for injuries either to her person or to her property. 32 O.S.1961, § 15; 12 O.S.1961, § 224; Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660; Moore v. Moore, 59 Okl. 83, 158 P. 578. As the marriage rela-

tionship provides no defense to the husband, the better view is that the statute of limitations will run to bar a wife's claim against her husband during coverture. See In re Crawford's Estate, 155 Kan. 388, 125 P.2d 354; Graves v. Howard, 159 N.C. 594, 75 S.E. 998, Ann.Cas.1914C, 565; Dunning v. Dunning, 300 N.Y. 341, 90 N.E.2d 884; Cassas v. Cassas, 73 Wyo. 147, 276 P.2d 456, 464, 69 A.L.R.2d 187, 197. We believe this conclusion finds support in the reasoning expressed in two previous decisions of this court, Wilhelm v. Pfinning, supra, and Guyer v. London, supra. While it was determined in both cases that the action of the husband did not amount to a clear repudiation of his wife's interest in the property, the clear implication of these decisions is that the statute of limitations would have run against the wife had the repudiation of her interest been effective.

■ Finally the plaintiff asserts that the statute was tolled by the subsequent conduct of Mr. Catron in requesting her signature on leases and deeds of sale which caused her to be "lulled into inaction." The evidence failed to show that the repudiation of the plaintiff's interest was ever withdrawn or qualified, but reflects that the conduct of Mr. Catron was consistent with his declaration that the plaintiff had no rights of ownership in the property. Subsequent wills of the deceased contained similar exclusive ownership provisions; and title to all property purchased afer 1947, other than the homestead, was taken solely in Mr. Catron's name. It was also conclusively established that it was the widely accepted custom for the wife to join with her husband in executing leases and deeds of sale regardless of whether she actually possessed any rights of ownership in the property. The purpose of this joinder of the wife was to facilitate property transactions by eliminating questions as to homestead rights and title examination problems. See 2 Patton, Titles, §§ 397, 398 (2d ed.); 1 Powell, Real Property, para. 121; 2 Flick, Abstract & Title Practice, § 1072 (2d ed.). In these circumstances,

the fact that plaintiff joined in leases and conveyances, as she had done prior to 1947, should not have caused her to believe that her husband recognized her as an owner of the property. Cf., Leidig v. Hoopes, Okl., 288 P.2d 402.

■ As no action to establish a trust was commenced within five years of the date that the plaintiff was clearly informed by Mr. Catron that she had no rights of ownership, her recovery is barred by 12 O.S.1961, § 95(7).

■ An additional contention of the plaintiff is that the trial court erroneously excluded her testimony concerning transactions with the deceased under the terms of the dead man's statute, 12 O.S.1961, § 384. According to the plaintiff, the defendant waived the restrictions of the statute by failing to object to portions of her testimony about certain transactions with the deceased and by eliciting certain testimony from her on cross examination. Avis v. Hopping, 184 Okl. 527, 88 P.2d 622; In re Dearborn's Estate, 151 Okl. 58, 2 P.2d 93. In reply, the defendants assert that they had a continuing objection to the plaintiff's testimony and that the specified testimony of the plaintiff upon cross examination was not responsive and was stricken from the record. The record supports the position of the defendants. Further, we have examined the offer of proof in the instances where the statute was allegedly waived and conclude that the excluded evidence would not have materially affected the result in this case. Therefore, the action of the trial court in excluding this testimony would not be reversible error even if it is assumed that the testimony should have been admitted. Byrd v. McKoy, 183 Okl. 209, 81 P.2d 315; Bedwell v. Williams, Okl., 330 P.2d 359.

■ The plaintiff also argues that the fact that she signed certain notes and mortgages gives her an ownership interest in the property. Again we cannot agree. Expert testimony was introduced to show that it was the universal practice of lending institutions in that area to require the sig-

nature of the wife upon these instruments as upon leases and deeds of sale. One of these experts, a vice-president of the executor bank, testified that he had had a number of business dealings with Mr. Catron including the negotiation of loans on real estate. He stated that, to the best of his knowledge, the plaintiff had not been present during the negotiations for these loans, that he had not considered her to be an owner of the property, and that he had required her signature, in accordance with the practice of the banking industry, because she was Mr. Catron's wife. It is clear that the real estate loans in question were made without active participation by the plaintiff and without reliance on her credit, and that she has never been required to pay anything on any of the loans. All of the notes have been paid in full by Mr. Catron or by his estate. Such evidence provides no basis for decreeing a trust on the property in favor of the plaintiff. Phelps v. Davies, 126 Cal.App. 419, 14 P.2d 922; Serota v. Serota, 20 Misc.2d 455, 189 N.Y.S.2d 260; Cassas v. Cassas, 73 Wyo. 147, 276 P.2d 456, 69 A.L.R.2d 187. As to the point under consideration the cited case of Phelps v. Davies is factually similar to the instant controversy, except that the position of the husband and the wife is reversed. The language employed by that court well summarizes our conclusion in this case:

"In the case before us, not only did the husband pay no part of the consideration for the land, but he had nothing with which to have paid it, and no facts appear that would justify the inference or conclusion that his wife gave him or intended to give him any interest in the land, or that his credit was relied upon in any way in making the purchase. The entire capital which enabled the purchase to be made was furnished by the wife from her separate funds, and the facts * * * that he lived with her upon the property, and that he signed the mortgage covering a part of the purchase price, are not controlling. * * *."

During her marriage to Mr. Catron, the plaintiff was not gainfully employed, and did not accumulate separate earnings or acquire property in her own name as she had a right to do under our married women's statutes. 32 O.S.1961, §§ 4, 5, 9(3), 15. But in addition to the legislation removing the common law disabilities of married women, the statutes of this state make good provision for a wife who chooses to fulfill the more traditional role of the homemaker. The husband has the primary duty to provide for her support throughout the continuation of the marriage. 32 O.S.1961, §§ 3, 10. If there are marital troubles, and they live apart, the statutes make provision for her separate maintenance. 12 O.S. 1961, § 1284; and see 32 O.S.1961, § 11. In case there is a divorce, the court has the power to divide and distribute the property as may be just and equitable. 12 O.S. 1961, § 1278. If the husband should predecease her, she is entitled to a definite portion of his estate and to the homestead whether he makes a will or dies intestate. 84 O.S.1961, § 44; 58 O.S.1961, § 311. Mrs. Catron, the plaintiff, has received her entitlements as a spouse. While having no assets in 1937, she was well-supported throughout her marriage and received one third of a sizable estate (in trust) by the terms of her husband's will. In addition she has received the homestead and furnishings valued at more than $25,000.00 and an expensive automobile.

██ ██ It is not asserted that the plaintiff did not capably perform her household duties and her responsibilities as a wife during her marriage to Mr. Catron. But this does not ordinarily entitle her to joint ownership of the property acquired during coverture. The rule is aptly expressed in the following quotation from In re Marsh's Estate, 125 Mont. 239, 234 P.2d 459:

"The common law rule that a wife owes a duty to her husband to attend to her household duties and to work for the advancement of her husband's interests was not changed by the Married Women's Act. * * * Those services which a

wife owes her husband do not create for her a joint interest in his estate. * * ” See, in addition, Johnson v. Johnson, Ky., 255 S.W.2d 610; Cox v. Cox, Miss., 183 So.2d 921; Ciufo v. Ciufo, 186 Misc. 1000, 60 N.Y.S.2d 848; Bank of Pittsburgh v. Purcell, 286 Pa. 114, 133 A. 31; Wilcoxon v. Carrier, 132 W.Va. 637, 53 S.E.2d 620. This rule is in harmony with previous decisions of this court holding that services rendered by a wife to her husband are presumed to be gratuitous and without expectation of consideration, absent an express agreement to the contrary. Andrews v. English, 200 Okl. 667, 199 P.2d 202; Payne v. Gilmore, Okl., 382 P.2d 140.

We recognize that in divorce proceedings and certain cases of intestate succession a wife, by virtue of statutory enactment, becomes entitled to certain rights in property acquired by joint industry during coverture. 12 O.S.1961, § 1278; 84 O.S.1961, § 213(2). In circumstances in which the cited statutes are applicable, the performance of a wife's customary duties during coverture is sufficient to entitle her to the benefits provided by these statutes. In re Stone's Estate, 86 Okl. 33, 206 P. 246; Tobin v. Tobin, 89 Okl. 12, 213 P. 884. However, these statutes are not applicable in this case as this dispute involves neither divorce nor intestate succession. See Jones v. Farris, 180 Okl. 341, 69 P.2d 344. The question presented here is whether, in the absence of legislation, a wife is entitled to joint ownership of property acquired during coverture by virtue of performing those duties that she owes to her husband as a result of the marital relationship. We hold that she is not. To hold otherwise would be to return this state to the law of community property by judicial fiat. This we decline to do. There is no rightful power in this court to incorporate into the laws of this state features of a property system heretofore abolished by our Legislature and involving far-reaching considerations of public policy.

By virtue of our disposition of this case, we need not consider the allegations of the petition that the $80,000.00 lost in oil ventures and the gifts to the defendant sons should be charged to Mr. Catron's interest in the property. The plaintiff concedes that if the property belonged totally to the deceased, her rights have not been infringed by the oil ventures or by the gifts to the sons.

We conclude that the plaintiff has failed to prove the existence of a trust by operation of law as alleged, but that the evidence presented and the law of this state fully sustain the judgment of the trial court. Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, WILLIAMS and BERRY, JJ., dissent.

BERRY, Justice (dissenting):

This is an equitable proceeding in which, at the conclusion of trial, the court stated:

"At the conclusion of the evidence the Court will render judgment for the defendants on the ground that the plaintiff has not, by the evidence in the case, demonstrated her cause of action by the clear, cogent, and convincing nature of evidence that's required for a judgment to be granted in her favor. * * * it's just not the clear, cogent and convincing type of evidence that the Court would require to go into this detailed mass of records and draw a complete true picture of a partnership that may or—I think possibly did occur, but by difficulty of proof through no fault of the plaintiff, through perhaps even by concerted effort of the deceased, by the loss of records, that a failure of proof on behalf of the plaintiff is indicated by the Court's ruling. I will prepare findings of fact and conclusions of law, if you desire.

\* \* \* \* \* \*

"I'm making the bare judgment on the amount, failure of the evidence, overall picture, not the high quality that's neces-

sary under the Supreme Court decisions of clear, cogent, convincing and unequivocal. *I think perhaps you do have a preponderance.* The mere preponderance in cases like this is not enough. You can make your record and exceptions are allowed." (emphasis supplied)

It is my opinion the evidence supporting plaintiff was sufficiently clear, cogent and convincing; and that the judgment which is affirmed is against the clear weight of the evidence. My disagreement with the majority, however, results from failure to recognize and apply our own statutes and case law which, in my opinion, are determinative of the issues. As a result of this, our prior decisions, declarative of legal principles concerning trusts and property rights jointly acquired during coverture, become conflicting and inconsistent.

As I understand the opinion the main premise is that no basis exists for imposing a constructive trust because there is no evidence of fraud, duress, abuse of confidence, or other misconduct by the husband in his dealings with plaintiff. This premise is effectively rebutted by the trial court's recognition that deceased's conduct of their joint affairs reflected an undue advantage taken of the plaintiff. Evidence as to the original partnership, which produced the funds which financed the entire Tulsa dealings, is disregarded upon the ground it is unnecessary to determine whether such partnership was valid or a sham for tax purposes.

The record shows execution of a certificate of fictitious partnership in 1942, and that thereafter the business operations were carried on in conformity therewith. The suggestion that the partnership might have been created as a sham for tax purposes lacks legal foundation, for the reason that there is no special concept of a partnership for tax purposes as opposed to ordinary partnership. A family partnership for tax purposes is measurable by rules applicable to family partnerships in general. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The evidence conclusively showed establishment of a partnership and plaintiff's acquisition of funds therefrom, which forcefully negates the findings and conclusions of the trial court in this respect.

As concerns the claim that all property became community property, it is asserted that plaintiff never objected to commingling of the assets, or attempted to withhold her separate property from the community. This premise is the basis for declaring that even if there were separate assets in 1945, these became so mingled with community property of considerably greater value that the separate property lost its identity and required all assets to be considered community property. Under the definition of community property contained in the Act, (32 O.S.Supp.1945 § 51 et seq.) in sections 1 and 2 of the Act (repealed S.L.1949, p. 229, § 1) no property acquired by either party either prior or subsequent to effective date of the Act fell within such definition. And, further, our decisions construing the Community Property Act, clearly establish that the estate of the non-managing spouse was a vested estate. Davis' Estate v. Oklahoma Tax Comm., 206 Okl. 644, 246 P.2d 318. And, under the Act the spouse had a present, vested interest in one-half of the community property. Page v. Sherman, Okl., 341 P.2d 270. In view of these decisions the conclusion, that the separate assets had lost their identity so that the aggregate became community property, is unfounded. The conclusion that, even if it be assumed the parties held separate assets in 1945, these were so commingled as to lose their identity is not supported by the record. Defendants' accountants corroborated plaintiff's evidence showing these parties held separate assets of approximately $47,000.00 each, plus joint accounts of $14,000.00. No assumption is required to establish this fact. And, the conclusion wholly fails to accord recognition to the unbiased evidence of witnesses who knew and discussed the Catrons' business endeavors, and patterned their own affairs after the Catrons' operations. The

conclusion reached directly conflicts with the law stated in Boroughs v. Whitley, Okl., 363 P.2d 150, and the cases above cited, all of which should be overruled to avoid further conflict in our case law.

The further conclusion is stated that plaintiff failed to protect her interests by compliance with requirements of the Act, by recording an instrument showing existence or renewal of the parties' agreement. This can be sustained only by failure to accord any recognition to cogent and unbiased evidence which reflects the continued course of business dealings subsequent to 1949.

In 1947 the deceased attempted to secure plaintiff's agreement to a will, under the terms of which plaintiff was to acknowledge that all property, jointly acquired or standing in the parties' joint names, was deceased's separate property in which plaintiff had no interest. The plaintiff refused to sign such agreement. Up to this point there has been a failure to recognize existence of any trust relationship; However, solely upon the basis of plaintiff's knowledge of deceased's proposed will claim, the conclusion reached is that this constituted recognition of deceased's definite repudiation of the trust which set the 5 year statute of limitations running against her claim.

The proposed will, by which deceased sought to have plaintiff agree that all property was his individually and that she should waive her rights therein under the law, was simply an effort to secure execution of a contract void under the law. A surviving widow has an absolute right to participate in the husband's estate, but has no interest in the property until the other's death; hence there is nothing which can be disposed of by contract. In re Blaydes' Estate, 202 Okl. 558, 216 P.2d 277. A contract which has for its purpose the destruction of a right granted by law is void as against public policy. In re Blaydes' Estate, supra.

The further conclusion, in relation to running of the statute against plaintiff, is bottomed upon the declaration that there is no evidence deceased's repudiation of the trust ever was withdrawn or qualified. There are obvious answers which destroy the force of this argument. Had the trial court believed deceased's presentation of the 1947 will constituted an unequivocal repudiation of the trust, which started limitations running against plaintiff's claim, the issue would have been closed and the cause determinable upon that basis alone.

There is the further argument that positive evidence plaintiff joined in execution of instruments, by which deceased continued to take title in his own name, is indicative of nothing more than that plaintiff was complying with accepted custom concerning title requirements and to facilitate consummation of the transaction by eliminating problems which might arise upon title examination. Whether anticipated title examination problems suffice to destroy the verity of formal instruments, the fact remains the undisputed evidence was that, at the time of trial, various mortgagees considered plaintiff liable upon the financial obligations, evidenced by the notes and mortgages she signed, standing against certain properties to which deceased took sole title and which are decreed to be separate property.

If the conclusion that plaintiff's claim was barred under 12 O.S.1961, § 95(7), because deceased had repudiated the existing trust is to stand, it is respectfully urged that In re Blaydes', Estate, supra, and other cases of similar import must be specifically overruled since no longer expressive of the law in this State.

The conclusion relative to non-applicability of our statutes, 12 O.S.1961, § 1278 and 84 O.S.1961, § 213, as to what constitutes property acquired by joint industry during coverture, announces a new and startling rule of law. Even more disruptive of our own decisional law is the fact that the rule, declarative of what constitutes jointly acquired property, is injected into our law upon the basis of questionable foreign authority and without overruling prior, controlling decisions.

It is determined that property recognized as jointly acquired by the marital community under the statutes, supra, is not to be measured by the same tests in a case involving trusts, or breach of confidential relationship. Thus, hereafter, this Court will be called upon to decide questions involving jointly acquired property upon the basis of what form the cause of action takes. Under the statutes, supra, jointly acquired property will consist of property acquired during marriage by joint efforts of each spouse in his or her recognized sphere of marital activity. Thompson v. Thompson, 70 Okl. 207, 173 P. 1037; Stone v. Stone, 86 Okl. 33, 206 P. 246. However, in a suit to establish a trust, or to set aside a conveyance on the ground of fraud, the fact that joint acquisition resulted from a spouse's "* * * economy, industry, frugality and sturdy virtues, which have been a stay to the home and the constant guard of the accumulations * * *" no longer will be considered. See Tobin v. Tobin, 89 Okl. 12, 213 P. 884, and innumerable cases following the rule.

Jones v. Farris, 180 Okl. 341, 69 P.2d 344, is cited in support of the conclusion, that our statutes have no application unless the case involves divorce or intestate succession. Cursory examination of that decision discloses that inapplicability of section 213, supra, was determined upon another ground. Moreover, this Court specifically declined to pass upon the question whether § 1278, supra, should apply to an interest based upon an asserted resulting trust. It appears that Farris, supra, provides no support for the statement that our statutes have no application except in cases involving divorce or intestate succession.

The patent inapplicability of the rule, quoted from In re Marsh's Estate, 125 Mont. 239, 234 P.2d 459, that a wife's services during coverture create no joint interest in the husband's estate, is apparent. This is best evidenced by the fact that in Montana, a dower state, there is no statutory authority for a trial court in a divorce action to divest the husband of any property in the wife's behalf. In that jurisdiction the statutes require, where title to property is in the husband's name only, that the wife prove any contributions made were not a gift. Absent such proof the wife is held to be a stranger to the title. And, it is interesting to note that in Bingham v. Nat'l Bank, 105 Mont. 159, 72 P.2d 90, 113 A.L.R. 315, it is recognized that Montana applies a minority rule because of the special statutes.

The case of Johnson v. Johnson, (Ky.) 255 S.W.2d 610, also cited, likewise arose in a dower state. Both in Johnson, and Eckhoff v. Eckhoff, (Ky.) 247 S.W.2d 374, that court stated that a wife's services which aid the husband in procuring property give the wife no interest therein, because her services are not of the type which constitute valuable consideration within meaning of the Kentucky statute, which controlled the court's judgment.

It is respectfully submitted that the authorities cited do not support the conclusion stated. Time prevents elaboration of this discussion, or citation of our decided cases destroyed by such holding. The true basis and extent of the rule as to what constitutes jointly acquired property may be observed in In re Keith's Estate, Okl., 298 P.2d 423, wherein the parties lived together three days prior to the husband being killed during army service. Money which had accrued to deceased from army pay following the marriage was held to be jointly acquired property. In the body of the opinion this Court stated:

"Once it is recognized that the statutory proviso in question here pertains to an estate in the nature of common, or community, property and that; because of this nature, it makes no difference whether the wife has contributed any particular effort or industry, mental or physical, to its acquisition, and that a valid marriage is the only requisite to the existence of such an estate, it will be seen that the proviso applies to an estate like the one involved here, the same as to other estates, where the widow, as the wife, con-

tributed nothing tangible to the estate's accumulation through 'industry' in the strict sense of the word. A contrary interpretation of said statute would be arbitrary, discriminatory, and without valid foundation in the law. * * * Both the law and public policy dictate against such interpretation. * * * "

Our statutes recognize that property acquired by joint industry of the parties to a marriage is jointly acquired property and subject to disposition as such. 12 O.S.1961, § 1278; 84 O.S.1961, § 213. Upon basis of these statutes we have declared without exception that property acquired by joint industry of the parties during coverture is jointly acquired property. I am unfamiliar with any case that has declared a wife, whose efforts consisted of performance of the customary duties of the marital relationship, fails to acquire a joint interest in the property accumulated during coverture.

In Stone v. Stone, 86 Okl. 33, 206 P. 246, the Court had occasion to construe 84 O.S. 1961, § 213, then Section 8418, R.L.1910, and particularly the proviso therein which concerns disposition of property acquired during coverture when there is no issue of marriage. This syllabus states, in pertinent part:

"It is the purpose of section 8418 * * * to provide a general rule of descent and when the first sentence thereof is read in connection with the proviso * * * a fair interpretation would be as follows: Provided that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivors at whose death, if any of said property remain (undisposed of by will) one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to their right of representation, and the phrase, 'That in all cases where the property is acquired by the joint industry of husband and wife during coverture,' includes all property not owned by the husband or wife at the time of their marriage or acquired by them respectively thereafter by gift, devise or descent, and further held, that the phrase 'by the joint industry of husband and wife during coverture' means the industry of a husband and wife each, in his or her recognized sphere of marital activity, and not that both must pursue jointly the same business or calling."

In Thompson v. Thompson, 70 Okl. 207, 173 P. 1037, a divorce proceeding involved application of Section 4969, R.L.1910, now 12 O.S.1961, § 1278. The paramount question concerned division of the property the title to which stood in the wife's name. In that case, similar in many respects to the present appeal, the court stated that the statute regards the property of married persons as falling within two classes—separate property of each spouse and property accumulated by the business side of the marriage. In relation to the latter, we said:

" * * * This latter character of property, very similar in conception to the community property of the community property states, is regarded as being held by a species of common ownership. This is shown by the statute itself, where it speaks of the property 'acquired by the parties jointly during marriage, whether the title be in either or both of said parties.' No one will question the power and duty of the court in dissolving the marriage relation to divide the common property, and the above-quoted statute allows the court to go beyond this and give to either party under certain circumstances a portion of the separate property of the other. The power of a divorce court to deal with the separate property of the spouses is not here involved, for the reason that the property awarded the husband was not separate property; it was acquired during the marriage relation as a result of the judgment and industry of the husband and wife, truly one in the eyes of the law in the earning and accumulation of new property. The notion that the title to the property being in the wife by reason of conveyance or contracts

with the husband shows that it was her separate property must be rejected for several all-sufficient reasons. The statute itself negatives the idea that the record title is to prevail."

In Tobin v. Tobin, 89 Okl. 12, 213 P. 884, this Court again construed and applied Section 4969, R.L.1910, now 12 O.S.1961, § 1278, particularly the second provision of the statute dealing with property acquired jointly during marriage, whether title stood in the name of either or both. The Court stated that the property division contemplated by the statute contemplated a just and reasonable division of the property acquired by the parties during marriage.

Therein we said that it was in no sense alimony when this Court makes an equitable division of property jointly acquired by their business ability, industry and economy during married life, which property the law considers as jointly acquired accumulations of the husband and wife. And, whether divorce is granted to the husband or the wife, this provision of the law is the same as to all jointly acquired property—the parties are entitled to an equitable division. In that case attention was called to the fact that the factors to be considered involve the fact that joint acquisition of property may be due to the wife's "economy, industry, frugality and sturdy virtues, which have been a stay to the home and the constant guard of the accumulations, * * *."

In Turner v. First Nat'l Bank & Trust Co., Okl., 292 P.2d 1012, 1016, we quoted Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010, at page 1018:

"'The only assets of a community at its inception are the labor, skill, industry and talents of the spouses. The community owns no property, and could never own any, under the theory of the trial court, if the business carried on is farming separately owned lands of one or both spouses. If a husband at the time of marriage owned, say, a thousand acre farm that required all his time, industry and talent to operate, the community

would never own a dollar's worth of property. The husband could accumulate separate property from its usufructs and by will dispose of to others the original lands and all accumulations, and the wife would be without remedy. She might labor on the farm, bear children and spend a life of practical serfdom with no hope of accumulating any property she could call her own, or legally claim an interest therein.

"'The views here expressed have the approval of no less an authority than Professor Pomeroy, as stated in an article written by him and published in 4 West Coast Reporter 193 (1894), from which we quote as follows:

"'"All the decisions which have discussed the nature of community property agree in stating this fundamental theory; that all property, not falling within the definition of separate property, acquired after marriage by the labor either of the husband or of the wife is nevertheless deemed to be acquired by the labor of both the spouses."'"

It is my opinion the end result of the rules announced is abrogation of our statutes, and destruction of our judicial precedents involving joint property acquired by the marital community. For this reason it is absolutely required that all decisions which have defined property acquired by joint industry, as delineated in Keith, supra, and innumerable earlier decisions, must be overruled specifically if we are to avoid complete chaos in our law respecting jointly acquired property.

One further error inheres in the expressions concerning the relationship within the marital community. A settled principle of law, expressed by text and supported by our decisions, involves violation of the confidential relationship which exists between husband and wife. This rule is that a constructive trust may result from actual or constructive fraud, or as an equitable principle independent of fraud, where there is a violation of confidence or of fiduciary relationship. 89 C.J.S., Trusts,

§ 139 et seq.; Bogert, Trusts and Trustees (2d Ed.) § 471; Dike v. Martin, 85 Okl. 103, 204 P. 1106; Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048; Davis v. Travis, 175 Okl. 21, 52 P.2d 72; DeMoss v. Rule, 194 Okl. 440, 152 P.2d 594.

The relationship between husband and wife is of such highly confidential nature that undue influence, or the ability to exercise same, is implied from the very fact of the relationship. Thomas v. Thomas, 27 Okl. 784, 109 P. 825, 113 P. 1058, 35 L.R.A., N.S., 124; Mann v. Mann, 135 Okl. 211, 275 P. 348; Hamburg et al. v. Doak, 207 Okl. 517, 251 P.2d 510. The relationship being so highly confidential, the law presumes the parties act with one another in absolute confidence that each will be faithful to the other's interests, and neither need take precautions when dealing with the other. The conclusions reached and the rules announced absolutely require that the cited cases, and others based upon these principles, should be overruled specifically.

I respectfully dissent.